134 S.W.3d 58 (2004)
In the Interest of J.M.N., Je.M., Ja.M. and Jo.M.
Nos. WD 63811- WD 63814.
Missouri Court of Appeals, Western District.
May 18, 2004.
*61 Elizabeth K. Magee, Columbia, for Appellant.
Cynthia A. Suter, Moberly, Alana M. Barragan-Scott, Office of Attorney General, Jefferson City, for Respondent.
PAUL M. SPINDEN, Presiding Judge.
H.N. appeals the circuit court's judgment terminating her right to parent her four children, J.M.N., Je.M., Ja.M., and Jo.M. She complains that the circuit court erred by (1) authorizing the Division of Family Services to discontinue reasonable efforts to reunite her children with her, (2) denying her motion to dismiss the juvenile officer's petitions to terminate her parental rights, (3) denying her motion for more definite statement, (4) terminating her parental rights pursuant to §§ 211.447.2(1), 211.447.4(2), and 211.447.4(3), RSMo 2000, (5) finding that terminating her parental rights was in the children's best interests, and (6) terminating her parental rights because it violated her constitutional guarantee of equal protection. Because the circuit court did not consider the totality of H.N.'s conduct before and after the filing of the petitions for termination, we reverse the circuit court's judgment and remand for it to reconsider its judgment in light of the Supreme Court's opinion in In the Interest of K.A.W., 133 S.W.3d 1 (Mo. 2004).
In remanding this case, we feel compelled to express our deep concern about the length of time this case has languished in the courts. The juvenile officer took protective custody over these children on December 1, 1999, and the circuit court assumed jurisdiction over them on February 1, 2000. On July 12, 2001, the circuit court entered a permanent plan and ordered the Division of Family Services to discontinue its reasonable efforts to return the children to H.N.'s home and ordered the juvenile officer to commence an action to terminate H.N.'s parental rights.[1]
In the meantime, the juvenile officer filed the petitions to terminate H.N.'s parental rights on August 2, 2001, and filed first amended petitions to terminate H.N.'s parental rights on February 15, 2002. A year later, the circuit court held its hearings on the petitions on February 20-21 and on April 14 in 2003 and issued its decision terminating H.N.'s parental rights on May 9, 2003.[2] Almost two years had passed from the circuit court's ordering the juvenile officer to terminate H.N.'s parental rights to the circuit court's issuing its decision to terminate H.N.'s parental rights. Given the nature of this case, permitting the parties to expend two years litigating while young lives[3] are at stake is not acceptable. As the Supreme Court stated in D.G.N. v. S.M., 691 S.W.2d 909, 914 (Mo. banc 1985):
[T]he awesome responsibility for dealing with termination of parental rights which has been placed on the courts requires that the courts in turn do all within their power to make the execution of this responsibility easier, fairer, faster and more in the best interest of *62 the child. To this end, ... termination of parental rights [cases should] be expedited in every way possible and with all deliberate speed.
The evidence established that the Randolph County juvenile authorities took protective custody of the children on December 1, 1999, because (1) on November 1, 1999, H.N. held J.M.N.'s head under water in the bathtub causing her to fear that she would drown, (2) on November 1, 1999, H.N. struck J.M.N. with a spatula causing an injury to her eye, nose and lip which resulted in J.M.N.'s missing school for five days, (3) on November, 30, 1999, H.N. struck J.M.N. in the head and face with a spatula causing bruises and scratches, (4) on November 30, 1999, H.N. struck Je.M. with her hand and knocked him down and Je.M. told juvenile authorities that he had been injured in the past by H.N., and (5) on November 30, 1999, H.N. was arrested and no known suitable relatives existed to provide care for the children. The circuit court assumed jurisdiction over the children on February 1, 2000, and the children have remained in foster care since December 1, 1999.
Once the children were in the juvenile authorities' custody, the Division of Family Services began providing N.H. with services designed to reunite her with her children. This services included psychiatric and psychological evaluations, outpatient drug and alcohol treatment, individual counseling, family counseling, and referrals for outpatient treatment programs, an AA group, a NA group and an anger management program. Despite these services, H.N. continued to use illegal drugs and to violate other laws. On March 12, 2001, because of H.N.'s continued illegal drug use, the children's therapist recommended that H.N.'s visitations with the children cease. Moreover, on July 12, 2001, the circuit court ordered the Division of Family Services to discontinue its reasonable efforts to reunite the children with H.N. and ordered the juvenile officer to commence an action to terminate H.N.'s parental rights. The circuit court determined that "the continuance of reasonable efforts towards return of said child[ren] to the home of [H.N. was] no longer required because it [was] inconsistent with establishing a permanent placement for the child[ren]."
The juvenile officer filed the petitions to terminate H.N.'s parental rights on August 2, 2001, and filed first amended petitions to terminate H.N.'s parental rights on February 15, 2002. On May 9, 2003, the circuit court issued its judgment terminating H.N.'s parental rights pursuant to §§ 211.447.2(1), 211.447.4(2), and 211.447.4(3). H.N. appeals.

Point One
In her first point, H.N. asserts that the circuit court erred in authorizing the Division of Family Services to discontinue reasonable efforts to return the children to H.N.'s home without making findings pursuant to § 211.183.7, RSMo 2000.[4] Section *63 211.183.7, however, concerns the division's discretion to makenot discontinuereasonable efforts to reunite a child with a parent. If the circuit court finds that certain circumstances exist, the division has the discretion of deciding whether or not to make reasonable efforts to return a child to his or her home.
Section 211.183.6, RSMo 2000, says, "If continuation of reasonable efforts ... is determined by the division to be inconsistent with establishing a permanent placement for the child, the division shall take such steps as are deemed necessary by the division, including seeking modification of any court order to modify the permanency plan for the child." This is what happened in this case. The division was making reasonable efforts to reunite H.N. with her four children, but the division determined that those reasonable efforts were inconsistent with establishing a permanent placement for the children. The division, consistent with § 211.183.6, recommended to the circuit court that it be relieved of its obligation to make reasonable efforts toward reunification of H.N. with her children, and the circuit court agreed. See In the Interest of A.M.C., 87 S.W.3d 917 (Mo. App.2002), and In the Interest of T.E., 35 S.W.3d 497 (Mo.App.2001). The circuit court found that "the continuance of reasonable efforts towards return of said child[ren] to the home of [H.N. was] no longer required because it [was] inconsistent with establishing a permanent placement for the child[ren]."
The division and the circuit court followed the procedure set forth in § 211.183.6 in discontinuing the division's reasonable efforts to reunite the children and H.N. The circuit court was not required to make any findings pursuant to § 211.183.7. Moreover, the division's not providing services to H.N. is no defense to a termination proceeding. In the Interest of N.D., 857 S.W.2d 835, 840 (Mo.App. 1993). H.N.'s contention is without merit.

Point Two
H.N. next asserts that the circuit court erred in denying her motion to dismiss the petitions to terminate her parental rights for failure to state a claim upon which relief could be granted. She contends that the circuit court did not have subject matter jurisdiction because the original petitions for jurisdiction over the children were not properly adjudicated. "[I]f the juvenile court lacked subject matter jurisdiction over the children, then she may raise lack of jurisdiction as a defense to the court's later termination of her parental rights, for a court's lack of subject matter jurisdiction may be raised at any time." In the Interest of B.R.M., 912 S.W.2d 86, 90 (Mo.App.1995).
H.N. stipulated that, if the juvenile officer produced evidence, the circuit court would be justified in sustaining the allegations of the petitions and in asserting jurisdiction over the four children. H.N., however, did not admit to the petitions' allegations. H.N. now complains that the circuit court erred in accepting the stipulation.
A stipulation does not relieve the court of its duty to follow the requirements of statutes and court rules. In the Interest of E.S., 851 S.W.2d 676, 681 (Mo.App.1993), superseded in part by statute as stated in In the Interest of A.H., 45 S.W.3d 899 (Mo.App.2001).[5] H.N. makes much of the *64 circuit court's not reading in open court all of the allegations of the four petitions and not receiving any evidence on the petitions' allegations. Rule 119.02.a(1) says, "[T]he court shall determine that the juvenile and the juvenile's custodian have been informed of the substance of the petition." Although H.N. contends otherwise, this rule does not require that all of the allegations be read in open court. Rules 119.02.a(4)(B) and 119.02.a(6)say, "[T]he court may inquire ... of the juvenile and the juvenile's custodian ... whether they admit or deny any or all of the allegations of the petition.... [I]f no allegations are admitted..., the court shall receive evidence upon the allegations of the petition." The record, however, makes clear that H.N. was aware of the petitions' allegations and, in light of the stipulation, receiving additional evidence on the allegations was unnecessary. H.N. agreed on the record in open court that, "if evidence was adduced on all four ... children, on the petitions that [were] filed in connection will all four of [the] children, ... that evidence would result in the Court[`s] sustaining the petitions that [were] filed in the case of each child." The stipulation was the evidence that the circuit court received in light of H.N.'s denial of the allegations.
The circuit court accepted the stipulation, sustained the petitions, and found that all the allegations in the petitions were true. The court found that the children needed proper care, treatment, and supervision and that they came within the court's jurisdiction pursuant to § 211.031.1(1), RSMo 2000. These findings were sufficient for the circuit court to acquire jurisdiction over the four children. B.R.M., 912 S.W.2d at 90.

Point Three
H.N. next asserts that the circuit court erred in denying her motion for more definite statement because the petitions for termination of parental rights did not set forth the facts on which termination was sought. She claims that the juvenile officer's petitions were insufficient pursuant to Rules 121.02 and 114.01 and § 211.452, RSMo 2000. We disagree.
Rule 121.02 requires a petition for termination of parental rights to be in the form provided by Rule 114.01. Rule 114.01.b(3) requires that the petition to set forth "plainly and concisely, with reasonable particularity ... the facts that bring the juvenile within the jurisdiction of the court, including the date, place and manner of the acts alleged and the law or standard of conduct, if any, allegedly violated by the acts[.]" This rule "requires the petition [only] to set forth the facts which brought the juvenile within the court's jurisdiction." In the Interest of L.G., 764 S.W.2d 89, 93 (Mo. banc), cert. denied, 491 U.S. 909, 109 S.Ct. 3196, 105 L.Ed.2d 704 (1989). The juvenile officer's petitions for termination of parental rights for each of the four children fulfilled this requirement. In each of the petitions, the juvenile officer set forth the facts that brought the children within the court's jurisdiction.
H.N. also asserts that the petitions were insufficient pursuant to § 211.452.1(4), RSMo 2000. "[D]ue process requires that `[t]he petition in a termination of parental rights case should contain allegations likely to inform those persons involved of the charges, to the end that objection may be prepared.'" In the *65 Interest of H.R.R., 945 S.W.2d 85, 88 (Mo. App.1997). Section 211.452.1(4) says that the petition for termination of parental rights shall include "[t]he facts on which termination is sought and the ground or grounds authorizing termination pursuant to section 211.447."
In this case, the petitions tracked the statute's language and gave H.N. adequate notice of the allegations against her. See L.G., 764 S.W.2d at 93. The petitions alleged that the children had been abused and neglected and that conditions of a potentially harmful nature continue to exist. The petitions set forth the acts of abuse and neglect that brought the children under the court's jurisdiction and set forth H.N.'s failures to follow the Division of Family Service's social service plan: that H.N. did not maintain treatment for drug abuse and did not appear consistently for supervised visits with the children. The petitions sufficiently advised H.N. of the allegations against her. The circuit court, therefore, did not err in denying H.N.'s motion for more definite statement.

Point Four
In her next point, H.N. contends that the circuit court erred in terminating her parental rights pursuant to § 211.447.2(1) based on the children's being in foster care for 15 of the most recent 22 months. The Supreme Court recently addressed this issue in In the Interest of M.D.R., 124 S.W.3d 469, 476 (Mo. banc 2004), and held that § 211.447.2(1) does not make foster care custody for at least 15 of the previous 22 months a ground for terminating parental rights. Hence, the circuit court erred in finding that H.N.'s parental rights could be terminated pursuant to § 211.447.2(1).

Point Five
H.N. next asserts that clear, cogent, and convincing evidence did not support the circuit court's termination of her parental rights pursuant to § 211.447.4(2) for abuse and neglect and § 211.447.4(3) for failure to rectify. In a termination proceeding, the circuit court, before considering the child's best interest, must determine whether or not the juvenile officer proved a statutory ground for termination by clear, cogent, and convincing evidence. Evidence is clear, cogent, and convincing if, when weighed against all of the evidence, it instantly tilts the scales in favor of termination. We review the circuit court's judgment by determining whether it is supported by substantial evidence, is consistent with the weight of evidence, or accurately declares and applies the law. In the Interest of C.N.G., 109 S.W.3d 702, 705 (Mo.App.2003).
We review termination of parental rights cases closely because termination of parental rights interferes with a basic liberty: freedom from governmental interference with family and child rearing. In the Interest of P.C., 62 S.W.3d 600, 603 (Mo.App.2001). "`Terminating parental rights is an exercise of an awesome power and should not be done lightly.'" Id. at 602-03 (quoting In the Interest of T.H., 980 S.W.2d 608, 613 (Mo.App.1998)).
In determining whether or not to terminate parental rights pursuant to § 211.447.4(2), the circuit court must make findings of fact as to the conditions specified in subparagraphs (a) through (d). In the Interest of Q.M.B., 85 S.W.3d 654, 658 (Mo.App.2002). Section 211.447.4(2) says:
The juvenile officer or the division may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:
....

*66 (2) The child has been abused or neglected. In determining whether to terminate parental rights pursuant to this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:
(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;
(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or
(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development;
In making its findings in this case, the circuit court ruled that H.N. did not suffer a mental condition that rendered her unable to provide the necessary care, custody and control of her children. It also ruled that she did not suffer a chemical dependency that prevented her from providing the necessary care, custody and control of her children. Instead, the circuit court rested its judgment on §§ 211.447.4(2)(c) and (d). In regard to the findings concerning severe acts of physical abuse, the circuit court's judgments[6] said:
The natural mother has committed severe acts of physical abuse toward [J.M.N.] by holding the child's head under water in the bathtub causing the child to fear of [sic] being drowned and by striking [J.M.N.] about the head and face with a spatula causing bruises, scratches and injury to the child's eye, nose and lip.
The natural mother has committed severe acts of physical abuse toward [Je.M.] by striking the child on more than one occasion in the face with her hand and knocking him down and by striking the child's sibling in the head and face with a spatula causing bruises and scratches.
The natural mother has committed severe acts of physical abuse toward [Ja.M.'s] sibling, [J.M.N.], by holding [J.M.N.'s] head under water in the bathtub causing her to fear of [sic] being drowned and by striking [J.M.N.] about the head and face with a spatula causing bruises, scratches and injury to her eye, nose and lip and toward [Ja.M.'s] sibling, [Je.M.], by striking [Je.M.] on more than one occasion in the face with her hand and knocking him down.
The natural mother has committed severe acts of physical abuse toward [Jo.M.'s] sibling, [J.M.N.], by holding [J.M.N.'s] head under water in the bathtub causing her to fear of [sic]being drowned and by striking [J.M.N.] about the head and face with a spatula causing bruises, scratches and injury to her eye, nose and lip and toward [Jo.M.'s] sibling, *67 [Je.M.], by striking [Je.M.] on more than one occasion in the face with her hand and knocking him down.
Pursuant to § 211.447.4(2)(d), the circuit court also found that, although the children were in foster care and before the filing of the petitions for termination of parent rights, H.N. "repeatedly and continuously failed to provide said child[ren] with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child[ren]'s physical, mental or emotional health and development."
H.N. complains that the circuit court erred in terminating her parental rights pursuant to § 211.447.4(2) because the circuit court's finding of severe abuse were based solely on the findings made by the circuit court at the initial jurisdictional hearing. She asserts that, because the allegations of the original petitions for jurisdiction were not properly adjudicated and because the circuit court did not properly assume jurisdiction over the children, the circuit court at the termination hearing could not have used those findings of abuse to support termination under § 211.447.4(2).
As we have previously found, the circuit court properly assumed jurisdiction over the four children. At the initial hearing, H.N. stipulated that, if the juvenile officer produced evidence on the allegations of abuse, the circuit court would be justified in sustaining the allegations of the petitions and in asserting jurisdiction over the four children. Based on this stipulation, but still recognizing that H.N. denied the allegations, the circuit court accepted the stipulation of the parties, sustained the petitions, and found that all the allegations in the petitions were true.
We agree, however, that the circuit court erred when it based its decision to terminate H.N.'s parental rights pursuant to § 211.447.4(2) solely on its findings of abuse made at the initial jurisdictional hearing. Indeed, the circuit court did not hear any evidence of the abuse at the termination hearing.
The lack of evidence on the issue arose when H.N. objected to the juvenile officer's attempt to introduce evidence about the abuse:
[M]y objection is, that the way these pleadings are worded, it says: That on or about February 1st, 2000, the child was made a ward of this Court because of the following reasons.
And then basically lists what the Court's findings were at the time. So my objection is, that we are not put on notice that we are going to relitigate those issues.[7] We're not put on notice that we have to be prepared to defend these. What we're put on notice for is that this is what the order says. This is why these kids were made wards of the Court. That is a simple take judicial notice of the court order, which you have already done. To relitigate is res judicata. And we just ask that you take judicial notice of that order and not put us in the position where we have to defend those issues.
After the objection, this exchange occurred between the court and the parties' attorneys:
THE COURT: Would you like to respond?
[JUVENILE OFFICER'S ATTORNEY]: Yes. I mean I[i]f she wants to say this is res judicata, and the [c]ourt *68 has already taken judicial notice actually of its order ofI forgot the date, but February[n]o, it's order of[i]t might be February 1, 2000.
....
I will not need to put Holly back on. I mean I normally put on the person that made the investigation and determination, so the [c]ourt is fully aware, in particular in this case where there's been about four different judges hearing all this. But I know the [c]ourt is perfectly capable of taking judicial notice of the [c]ourt's orders. And I will skip Holly then.
....
[H.N.'S ATTORNEY]: I mean we don't necessarily agree that that order was a proper order, but clearly
THE COURT: Well, I understand that.
[H.N.'S ATTORNEY]:from the facts, you know, you just look at the file and that's what that order says. And so I just don't[w]e're not ready to defend those allegations[, a]nd we accept that that's what that court order says.
[JUVENILE OFFICER'S ATTORNEY]: That's fine.
THE COURT: Well, I
[H.N.'S ATTORNEY]: Although we don't agree with it.
[JUVENILE OFFICER'S ATTORNEY]: That's fine.
THE COURT: Okay. There you go.
[JUVENILE OFFICER'S ATTORNEY]: That's fine. That's great.
THE COURT: Sounds like you don't need her.
[JUVENILE OFFICER'S ATTORNEY]: That's great. That will shorten me.
Based on this understanding, the juvenile officer did not present evidence of the abuse. The circuit court took judicial notice of its previous findings of abuse and did not hear any evidence concerning the abuse of the children at the termination hearing.
A finding that a child has been previously adjudicated abused is not sufficient to support termination of parental rights. In the Interest of C.L.W., 115 S.W.3d 354, 356 n. 3 (Mo.App.2003). This is not to say that the act of abuse used as the basis for the prior abuse adjudication cannot be used as the basis for the termination. See L.G., 764 S.W.2d at 95. To terminate parental rights based on abuse, the circuit court must make an affirmative finding that at least one of the factors listed in § 211.447.4(2) exists. The circuit court did that in this case. It determined that the abuse that was severe enough to justify termination pursuant to § 211.447.4(2)(c).
The Supreme Court, however, recently instructed, "[I]t is insufficient merely to point to past acts, note that they resulted in abuse or neglect and then terminate parental rights.... Past behavior can support grounds for termination, but only if it is convincingly linked to predicted future behavior." K.A.W., 133 S.W.3d at 9-10. Moreover, "[t]here must be some explicit consideration of whether the past acts provide an indication of the likelihood of future harm." Id. at 10. The abuse or neglect sufficient to support termination under § 211.447.4(2) must be based on the conduct at the time of the termination, not just at the time jurisdiction was initially taken. Id. "Findings supporting earlier determinations are not irrelevant, but they must be updated to address the extent to which they describe the time of the termination and the potential for future harm." Id. at 10. The circuit court cannot support its decision to terminate parental rights merely by incorporating earlier findings *69 supporting its assumption of jurisdiction. Id. This is what the circuit court did in this case.
The circuit court did not consider whether these past acts predicted H.N.'s future behavior or the likelihood of future harm to the children. Indeed, the circuit court heard ample evidence that H.N. had made significant improvements in her life after being diagnosed as suffering a bipolar disorder and receiving treatment for it. The circuit court, however, merely based its findings on H.N.'s conduct at the time jurisdiction was initially taken and not at the time of the termination.
The circuit court also found that, pursuant to § 211.447.4(2)(d), H.N. did not provide the children with adequate food, clothing, shelter, or education after the children came into foster care and before the filing of the petition for termination of parental rights. Such finding, however, also did not take into consideration the evidence at the time of the termination. To terminate under § 211.447.4(2)(d), the juvenile officer must show that the parent has not fulfilled the affirmative duty to support, communicate with and visit the child and show that the parent lacks a commitment to and interest in the child. Q.M.B., 85 S.W.3d at 660. The evidence established that H.N. provided minimal support to the children before the filing of the petitions for termination of parental rights. After her bipolar diagnosis and continued treatment, H.N. made regular support payments for the children and even paid most of the support that was in arrears. Moreover, before the division terminated H.N.'s visitations with the children in April 2001, H.N. exercised her visitation with the children and missed only two visits and was late for only two to three visits. After visitations ceased, H.N. continued to ask the division about the children. H.N. always acknowledged the children's birthdays and holidays with cards and gifts, and she sent letters, cards in which she had enclosed money, clothing, and framed drawings to the children.
Evidence of short-term improvements in a parent's circumstances which occur after the filing of the termination petition may not be compelling enough to overcome the parent's past conduct. In the Interest of N.M.J., 24 S.W.3d 771, 780 (Mo.App.2000). The juvenile officer filed the initial petitions for termination on August 2, 2001, and the hearing on the petitions were held over 19 months later. During that time, H.N. made significant improvements in her life. These changes cannot be labeled "short-term improvements." The circuit court's findings and conclusion must be based not only on the parent's past conduct but also on the parent's conduct at the time of termination. K.A.W., 133 S.W.3d at 9.
H.N. also complains that the circuit court erred in terminating her parental rights pursuant to § 211.447.4(3). In determining whether to terminate parental rights under § 211.447.4(3), the circuit court must make findings of fact concerning the conditions specified in subparagraphs (a) through (d). N.M.J., 24 S.W.3d at 778. Section 211.447.4(3) authorizes the circuit court to terminate a parent-child relationship when:
The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at any early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration *70 into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:
(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control[.]
In making the required findings, the circuit court ruled that H.N. did not suffer a mental condition that rendered her unable to provide the necessary care, custody and control of her children. It also ruled that H.N. did not suffer from a chemical dependency that prevented her from providing the necessary care, custody and control of her children. Instead, the circuit court rested its judgment on §§ 211.447.4(3)(a) and (b) and said:
Pursuant to Section 211.447.4(3) RSMo. this Court finds that [these children have] been under the jurisdiction of this Court for a period in excess of one year and the Court finds that the conditions of a potentially harmful nature continue to exist in that [H.N.] has been unable to maintain a stable residence, unable to maintain stable employment, consistently lives with men who have been convicted of a felony, was herself convicted of driving while under the influence of alcohol and convicted of endangering the welfare of a minor, continues to use drugs and fails to provide a safe and stable environment for the [children] and, based upon [H.N.'s] failure to show any improvement in her living conditions, there is little likelihood that those conditions will be remedied at an early date so that the [children] can be returned to [H.N.] in the near future and the continuation of the parent-child relationship greatly diminishes the [children's] prospects for early integration into a stable and permanent home. The Court further makes the following findings:
i. The "potential harmful condition" is the failure of [H.N.] to discontinue the use of drugs and to provide a safe and stable home environment for the [children]. The Missouri Division of Family Services proposed several social service plans, to-wit: (1) dated from December 22, 1999, to March 22, 2000; (2) dated from April 7, 2000, to July 7, 2000, (3) dated from July 12, 2000, to September 20, 2000, (4) dated from September 20, 2000, to November 15, 2000, (5) dated from November 15, 2000, to February 15, 2000[,] and (6) from April 13, 2001, to May 25, 2001, requesting that [H.N.] obtain drug and alcohol evaluations and treatment, to attend therapy and to maintain contact with the Division worker. [H.N.] has failed to comply with the provisions of the social service plans by failing to sign two of the social service plans, failing to seek drug and alcohol evaluations by failing to appear for evaluations *71 by the drug and alcohol evaluator on two occasions, failing to discontinue the use of drugs and failing to establish a stable home by moving on several occasions despite the advice of the caseworker that moving to another town would disrupt services.
ii. The Missouri Division of Family Services has provided [H.N.] with a psychiatric evaluation, a psychological evaluation, psychiatric services, inpatient drug and alcohol treatment at McCambridge Center in Columbia, Missouri, and at the Hannibal Council on Alcohol and Drug Abuse in Hannibal, Missouri, outpatient drug and alcohol treatment services from Daybreak in Columbia, Missouri; housing at Oxford House in Columbia, Missouri, weekly individual and group therapy at Preferred Family Healthcare; anger management classes, parenting classes, individual counseling with Robert Carter and with Jan Stock, family counseling with Mary Brady Kovacs and Robert Carter, a nurse practitioner, a social caseworker, a vocational caseworker and was referred to AA and NA group meetings, but all aid failed to adjust [H.N.'s] circumstances to provide a proper home for the [children].
Although H.N. does not dispute the findings of the court, she asserts that, in May 2001, she was diagnosed as bipolar and that after she began treatment for the bipolar disorder she has shown substantial improvement in her life and living conditions. She admits that, before her bipolar diagnosis and treatment, she did not maintain stable housing and employment and that she had unacceptable relationships with various men. She also acknowledges that, before her bipolar diagnosis, she had several arrests, convictions, and probation violations and that she abused drugs. She also admits that she had difficulty participating in the division's treatment plans before the bipolar diagnosis. She contends, however, that once she received treatment for her bipolar disorder, all of these things changed.
Indeed, most of the evidence that the circuit court cited in support of terminating H.N.'s parental rights was conduct that H.N. engaged in before the bipolar diagnosis and treatment. After the bipolar diagnosis, the evidence established that H.N. maintained stable housing and employment. Although H.N. was living with a man who was on probation for a felony at the time of the termination hearing, H.N.'s probation officer testified that H.N. informed her about the relationship and that, as a part of the probation, the probation officer monitored that relationship closely. The probation officer testified that, if she were to see any problems with the relationship, she would make a directive that they no longer live together or associate with one another.
The circuit court obviously was concerned with H.N.'s continued drug use. It found that H.N.'s failure "to discontinue the use of drugs and to provide a safe and stable home environment for the [children]" was a "potential[ly] harmful condition." Although H.N. denies that she continues to use drugs, the evidence established that two and one-half months before the termination hearing she tested positive for marijuana and cocaine. The evidence established, however, that before this incident, H.N. sought help because she was having feelings of anxiety, repetitive thoughts, not staying focused, and impulsiveness. Rather than admitting her to a crisis bed, H.N.'s caseworker sent her home for the weekend and arranged for someone to telephone her during the weekend. H.N. had a relapse during the weekend and used illegal drugs. According to H.N.'s probation officer, this incident was the first violation of her probation *72 in over two years. Moreover, the circuit court explicitly found that H.N.'s drug did not rise to the level of a chemical dependency that prevented her from providing the necessary care, custody and control of her children.
The circuit court's judgment reflects that it was concerned solely with H.N.'s conduct before the filing of the petitions for termination of her parental rights and before her bipolar diagnosis. Before filing the petitions for termination, the division entered into several social service plans with H.N. in an attempt to help her overcome her drug problems. The circuit court noted that H.N. did not comply with these social service plans.[8] The division referred her to inpatient drug treatment programs twice, but she did not complete the programs. She was terminated from one program for breaking confidentiality in a group session and from the other because she "appeared high" to the staff and left the program. The division also provided H.N. with numerous services including psychiatric evaluation, a psychological evaluation, psychiatric services, outpatient drug and alcohol treatment services, housing, weekly individual and group therapy, anger management classes, individual counseling and family counseling. Most of these services were offered to H.N. before the filing of the petitions for termination. Indeed, on July 12, 2001, before the filing of the petition for termination, the circuit court ordered the division to discontinue its reasonable efforts to reunite the children with H.N.
The division, however, did not discontinue all of its services to H.N. Although Randolph County Division of Family Services discontinued its reasonable efforts, H.N. moved to Boone County, and the Boone County Division of Family Services began offering some services to her. After her bipolar diagnosis, H.N. successfully completed a drug treatment program. She also attended counseling on a regular basis and attended AA/NA and parenting classes. She sought out help through University Behavioral Health and used the services of a nurse practitioner, social caseworker, and vocational caseworker. All of this evidence was relevant in determining whether or not conditions of a potentially harmful nature continued, what the likelihood that those conditions would be remedied at any early date was, or whether or not continuation of the parent-child relationship significantly diminished the children's prospects for early integration into a stable and permanent home. The circuit court's obligation was to consider the totality of the H.N.'s conduct before and after the filing of the termination petitions. K.A.W., 133 S.W.3d at 9.
Hence, upon remand, we direct the circuit court to consider all of H.N.'s conduct in determining whether or not grounds exist to terminate her parental rights pursuant to §§ 211.447.4(2) and 211.447.4(3).[9] "An essential part of any *73 determination whether to terminate parental rights is whether, considered at the time of the termination and looking to the future, the child would be harmed by a continued relationship with the parent." K.A.W., 133 S.W.3d at 9.

Point Six
In her final point, H.N. asserts that the circuit court erred in terminating her parental rights because the termination violated the equal protection clause of the Fourteenth Amendment to the United States Constitution.[10] She contends that the juvenile officer treated her differently than Ja.M.'s and Jo.M.'s father by dismissing the termination of parental rights petitions against their father. Even if she asserted a proper equal protection issueand she does not[11]H.N. did not preserve this constitutional issue for our review. "To preserve a constitutional question for appellate review, an appellant must (1) raise the constitutional question at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated; (3) state the facts showing the violation; and (4) preserve the constitutional question throughout the proceedings." T.E., 35 S.W.3d at 504. H.N. did not raise the constitutional question presented in this point before the circuit court. She filed a motion to dismiss the petitions for termination of her parental rights for Ja.M. and Jo.M. based on the importance of applying the best interests standards fairly and consistently throughout the case. She did not, however, raise an equal protection claim. Hence, because H.N. did not raise the constitutional question at the first available opportunity, she did not preserve the issue for our review.
We reverse the circuit court's judgment and remand for the circuit court to consider the totality of H.N.'s conduct both prior to and after the filing of the petition for termination in determining whether grounds exist to terminate her parental rights pursuant to §§ 211.447.4(2) and 211.447.4(3).
RONALD R. HOLLIGER and LISA WHITE HARDWICK, Judges, concur.
NOTES
[1] H.N. appealed the circuit court's permanency plan and disposition order to this court on August 22, 2001, and we issued an order dismissing her appeal on October 26, 2001, for the lack of a final judgment.
[2] H.N. appealed the circuit court's decision directly to the Supreme Court on June 18, 2003, because she was challenging the validity and constitutionality of § 211.447.2(1). On February 11, 2004, the Supreme Court transferred the case to this court.
[3] When the juvenile authorities took protective custody of the children, J.M.N. was eight years old, Je.M. was six, Ja.M. was three, and Jo.M. was two.
[4] Section 211.183.7 says, "The division shall not be required to make reasonable efforts, as defined in this section, but has the discretion to make reasonable efforts if a court of competent jurisdiction has determined that: (1) The parent has subjected the child to a severe act or recurrent acts of physical, emotional or sexual abuse toward the child, including an act of incest; or (2) The parent has: (a) Committed murder of another child of the parent; (b) Committed voluntary manslaughter of another child of the parent; (c) Aided or abetted, attempted, conspired or solicited to commit such a murder or voluntary manslaughter; or (d) Committed a felony assault that resulted in serious bodily injury to the child or to another child of the parent; or (3) The parent's parental rights to a sibling have been involuntarily terminated."
[5] In E.S., the court found that all the necessary parties stipulated to the jurisdiction of the court over the child but that "such stipulation only served to grant the court initial jurisdiction to temporarily remove [the child] from the home until an investigation could be conducted prior to a disposition hearing." The court said that it did not agree "that such a stipulation relieve[d] the court of its duty to follow the requirements of §§ 211.181, 211.183 and Rule 119." 851 S.W.2d at 681. The facts of E.S., however, do not disclose the contents of the stipulation other than that the parties stipulated to "jurisdiction of the court" over the child.
[6] The circuit court entered four separate judgments, one for each child.
[7] H.N.'s argument, however, was improper. She was put on notice that the juvenile officer sought to terminate her parental rights because the children had been abused and neglected as evidenced by the petition.
[8] "[T]he General Assembly did not mandate in § 211.447.4(3) that failure to comply with a written service agreement . . . was what the circuit court was to focus onnot even whether the parent's noncompliance was substantial. The General Assembly instead mandated that the circuit court consider `the extent to which the parties have made progress in complying with [the service agreement's] terms.' The issue is whether or not progress has been made toward complying with the service agreementsnot whether or not the compliance was full or substantial." C.N.G., 109 S.W.3d at 707.
[9] Because we are remanding this case to the circuit court, we do not address H.N.'s contention that the circuit court erred in concluding that termination was in the children's best interests. "A judgment terminating parental rights must engage in a two-step analysis. First, the trial court must find clear, cogent, and convincing evidence that provides grounds for termination of parental rights.... Second, if (and only if) grounds for termination exist, the trial court must determine whether termination of parental rights is in the child's best interest." In the Interest of N.R.W., 112 S.W.3d 465, 468 (Mo.App.2003).
[10] She did not assert a violation of the equal protection clause of Missouri's constitution at art. I, § 2.
[11] The best we can determine, H.N. actually intended to assert a due process claim: that the juvenile officer exercised her prosecutorial discretion arbitrarily and capriciously.