

# In the
# Missouri Court of Appeals
# Western District

IN THE INTEREST OF: K.A.L.,     )
    )
    Appellant;     )
    )
JUVENILE OFFICER,     )
    )    **WD86314 Consolidated Case: WD86374**
    Appellant,     )    **OPINION FILED:**
    )    **MARCH 19, 2024**
    v.     )
    )
H.L.,     )
    )
    Respondent.     )

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Kevin D. Harrell, Judge**

**Before Division Two: Anthony Rex Gabbert, Presiding Judge, Karen King Mitchell, Judge, Janet Sutton, Judge**

The Juvenile Officer[1] appeals the judgment of the Jackson County Circuit Court

denying her petition to terminate the parental rights of H.L. In three points on appeal, the

Juvenile Officer claims that the trial court erroneously applied and misinterpreted the law,

that the judgment was not supported by substantial evidence with respect to the alleged

---

[1] The Guardian Ad Litem also appeals the judgment, and this court consolidated the appeals. The Juvenile Officer and Guardian Ad Litem filed joint opening and reply briefs. For ease of reference, we refer to the Juvenile Officer and Guardian Ad Litem collectively as the Juvenile Officer.

grounds for termination, and that the trial court abused its discretion with respect to the child's best interest. The judgment is affirmed.

**Facts**

The child at issue in this case ("Child") came under the jurisdiction of the court as an infant pursuant to a petition filed in June 2011 ("the 2011 case"). The petition contained allegations against Child's mother ("Mother") and Child's putative father ("Father"). Child was ultimately placed with Mother, and the court released jurisdiction in July 2012.

The Juvenile Officer filed another petition in September 2017 ("the 2017 case"). The petition alleged Mother abused and neglected Child. Child was placed in the custody of the Children's Division for appropriate placement. Mother stipulated to the allegations in the first amended petition, and the court sustained the allegations. In a January 2018 disposition hearing, the court stated that paternity had not been established, and the Children's Division had been unable to locate Child's father. The court order allowed Child's father, if located, to have supervised visitation with Child. It also ordered the Children's Division to offer Child's father, if located, appropriate services.

Father appeared at an April 2018 case review hearing. Father's attorney appeared at a June 2018 case review hearing, a September 2018 permanency hearing, a March 2019 permanency review hearing, an August 2019 permanency hearing, and a February 2020 permanency hearing. The court's order with respect to Father receiving supervised visitation and appropriate services remained unchanged during this time.

Father's attorney appeared at a July 2020 permanency review hearing. The court ordered Father shall have visitation with Child as deemed appropriate by the Children's Division. Father appeared at a December 2020 permanency review hearing. The matter was continued without change. Father appeared at a February 2021 permanency review hearing. The court subsequently ordered that Child shall have visitation with parents as deemed appropriate by the Family Support Team and that all visitation shall be at Child's discretion.

Father appeared at a permanency hearing held in May 2021, June 2021, and July 2021. The court changed the permanency plan from reunification to termination of parental rights and adoption. The court found:

> The mother is incarcerated. [Father] has not significantly asserted his paternity since the inception of this case and before. Though he has recently expressed an interest in taking custody of the child, he has only visited the child on approximately three occasions since the beginning of the case. He has refused to participate in services designed to assist him to achieve reunification including psychological evaluation, parenting education, individual therapy and drug testing. The court notes that a primary concern in this case is the utter lack of a meaningful relationship between [Father] and [Child] due to his historical lack of concern for and indifference towards the child. The parent child relationship is of such nature that [Father] is unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, emotional needs of the child. . . . The child has also stated that she does not desire to be placed with her father in view of his failure to protect her from abuse by the aunt. Safe and appropriate reunification with a parent is not likely to be possible in the near or the foreseeable future.

The court ordered Child to have visitation with Father in family therapy when that is approved by the Family Support Team, that visitation is subject to Child's discretion, and

that Father have a psychological evaluation and education. Father filed a motion for rehearing which was denied.

The Juvenile Officer filed a petition for termination of parental rights in December 2021. The petition alleged that Mother consented to the termination of her parental rights and that Father's parental rights should be terminated pursuant to sections 211.447.2(1), 211.447.5(2), 211.447.5(3), and 211.447.5(5)(a). [2] A judgment accepting Mother's consent to termination of her parental rights was entered in January 2022.

Father appeared at a January 2022 permanency review hearing. The court found:

> [Father] does not have the parenting abilities and capacities to provide proper care for [Child]. He was recently psychologically tested and was determined to have an IQ of approximately 40.[3] Though the case is 835 days old and a termination of parental rights case has been filed, he has only recently begun to participate in services offered to him to assist him to gain appropriate parenting skills and abilities. [Child] is a fragile juvenile and … requires a high degree of parenting ability for her care. The mother has consented to termination of her parental rights ….

The court ordered that Father shall not have contact with Child and that the Children's Division shall provide Father with appropriate services.

---

[2] All statutory citations are to RSMo 2016 as updated through the most recent cumulative supplement unless otherwise indicated.

[3] Father's IQ was not listed as a ground for termination in the first amended petition to terminate parental rights. To the contrary, the Juvenile Officer's petition explicitly stated it was "not alleging" that Father "has a mental condition that is permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders [Father] unable to knowingly provide the child the necessary care, custody, and control." Further, the Juvenile Officer does not argue on appeal that Father's IQ should be considered by this court in determining whether the trial court erred in denying the petition to terminate parental rights. Thus, we do not consider this finding made at a permanency review hearing on appeal.

The Juvenile Officer filed a first amended petition for termination of parental rights in May 2022. It alleged that Father's parental rights should be terminated under sections 211.447.5(2), 211.447.5(3), and 211.447.5(5)(a).

Father's attorney appeared at a June 2022 permanency hearing. The Court maintained the permanency plan of termination of parental rights and adoption and ordered that Father shall have such contact with Child as recommended by her therapist, only at Child's discretion, and initially therapeutically supervised. The Court also ordered that Father shall have in-person individual therapy and parent education, and that Children's Division shall provide Father appropriate services.

The termination hearing was held in August 2022. Child's foster care case manager, Child's therapist, Father's daughter, Father's sister, and Father testified.

In May 2023, the court entered judgment terminating Mother's parental rights and denying termination of Father's parental rights. It found that Father had not failed to provide for and support Child. Father had made regular child support payments.[4] Father had made progress in complying with the terms of the social service plan. Father had completed a psychological evaluation, engaged in individual counseling, and completed parent education services.

The court found that the largest barrier for reunification of Father and Child was the lack of visits for more than two years because Child refused to visit with Father. The

_____

[4] The evidence at trial was that Father had paid court-ordered child support since approximately 2013.

court acknowledged that Child's voice should be heard, but found that allowing Child to refuse visits with Father heightened Child's feelings. The court found that there was no evidence that possible contact between Father and Child had the potential to be so harmful as to require termination of parental rights.

The court stated that initially all case reunification efforts were geared toward Mother. Child was returned to Mother's home in 2020 and then removed in August of 2020. It was after that failed reunification that Father began requesting contact as well as placement. Since that failed reunification, the Children's Division had not offered Father even one visit or family therapy. Despite that, Father has participated in all ordered social services and demonstrated a strong interest in Child.

The court found that no evidence was presented that Father's contact with Child would be harmful to Child's physical, mental, or emotional wellbeing. The court noted that Child came into care because of Mother's actions and that allegations of abuse or neglect were not adjudicated against Father. It found no evidence of any abuse or neglect of a duration and nature that rendered Father unfit for the reasonably foreseeable future.

This appeal follows.

**Standard of Review**

"Termination of parental rights is permitted when a statutory ground for termination is supported by clear, cogent, and convincing evidence and when termination is determined to be in the best interests of the child by a preponderance of the evidence."

6

*Interest of A.M.R.*, 673 S.W.3d 864, 871 (Mo. App. W.D. 2023) (internal quotation marks omitted).  "The party seeking termination bears the burden of proof."  *Id*.

"On appeal, we apply two different standards of review."  *Id*.  "First, as to the statutory grounds for terminating parental rights, we will affirm the trial court's judgment regarding whether there was clear, cogent, and convincing evidence to support a statutory ground for termination unless there is no substantial evidence to support it, it is contrary to the evidence, or it erroneously declares or applies the law."  *Id*.  "Evidence is clear, cogent and convincing when it instantly tilts the scales in favor of termination when weighed against opposing evidence and leaves the fact-finder with the abiding conviction that the evidence is true."  *Id*. (internal quotation marks omitted).  "The judgment will be reversed only if we are left with the firm belief that the judgment is wrong."  *Id*. (internal quotation marks omitted).  "We strictly construe the statute governing termination of parental rights in favor of preserving the parent-child relationship."  *Id*.  "And we defer to the circuit court's ability to judge the credibility of witnesses."  *Id*. (internal quotation marks omitted).

"Second, as to the determination that termination is in the children's best interest, we will reverse [that] determination ... [only] when there is an abuse of discretion."  *Id*. (internal quotation marks omitted).  "An abuse of discretion occurs only when the trial court's ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration."  *Id*. (internal quotation marks omitted).

"Whether the court erroneously declared or applied the law is reviewed *de novo.*" *Interest of D.L.P.*, 638 S.W.3d 82, 96 (Mo. App. E.D. 2021).

## Point I

In her first point on appeal, the Juvenile Officer claims the trial court erroneously applied and misinterpreted the law. She states that a prior finding of abuse or neglect as to each parent in a section 211.031 action is not a prerequisite to finding any ground for termination of parental rights pursuant to section 211.447.5.[5] The Juvenile Officer argues that the trial court erred in denying the petition for termination of parental rights.

This point is focused on the court's findings with respect to section 211.447.5(2) and 211.447.5(5)(a). That statute provides in relevant part:

> 5. The juvenile officer or the division may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:

---

[5] Father argues that, under Missouri Supreme Court Rue 78.07(c), the Juvenile Officer has waived her arguments on appeal because she did not "raise her allegations of error regarding the form or language of the judgment … in a post-trial motion to amend or during the underlying court proceedings." Rule 78.07(c) applies to "allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings." The Juvenile Officer's points on appeal in the current case are not arguing that the court erred regarding the form or language of the judgment. Instead, she argues that the trial court applied an incorrect legal standard with respect to whether Father had been previously adjudicated as having abused or neglected Child and that the judgment is not supported by substantial evidence. Rule 78.07(b) discusses cases tried without a jury and provides that a motion for new trial or motion to amend the judgment are not required to preserve an issue for appellate review if the matter was previously presented to the trial court. Father's attorney objected several times at trial that Father had not been adjudicated as having abused or neglected Child and that there has never been any lawful process against Father with respect to those things. "The question of the sufficiency of the evidence to support the judgment may be raised whether or not the question was raised in the trial court." Section 510.310.4; *see, e.g., Interest of T.E.L.I.*, 673 S.W.3d 519, 521 n.3 (Mo. App. S.D. 2023). We will consider the Juvenile Officer's point on appeal.

…
(2) The child has been abused or neglected. In determining whether to terminate parental rights pursuant to this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development.

…

(5)(a) The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse including, but not limited to, specific conditions directly relating to the parent and child relationship which are determined by the court to be of a duration or nature that renders the parent unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or emotional needs of the child.

In the first amended petition, the Juvenile Officer sought to terminate Father's parental rights on three grounds. One ground was section 211.447.5(2). The petition alleged that Child has been abused or neglected as previously determined in the 2017 adjudication. The Juvenile Officer stated she was not alleging the factors found in

9

section 211.447.5(2)(a)-(c). The petition only made allegations with respect to the factor in section 211.447.5(2)(d). It stated that Father has failed to provide and support Child, that he has only had three visits with Child, that Child does not want contact with Father, that Father and Child do not have a bond, that Father does not believe what Child says about being abused, that Father is belligerent, that Father is not protective, and that Father is unable to meet Child's needs. A second ground identified in the petition was section 211.447.5(5)(a). The petition made the same allegations as it did for section 211.447.5(2).

During the hearing, the Juvenile Officer[6] asked the court to take judicial notice of the 2011 case involving Child. Defense counsel noted that the court could take judicial notice of any case and that the 2011 case might be relevant to the best interest analysis. However, defense counsel also argued that the 2011 case was not pled in either the petition or amended petition. For that reason, she requested the 2011 case not be used as a basis for one of the grounds of termination of parental rights.

The Juvenile Officer introduced evidence regarding whether Father's sister physically abused Child. Defense counsel objected that the amended petition did not contain allegation about any alleged abuse by the Child's aunt. The Juvenile Officer responded that the evidence was relevant to parenting capacity and grounds, best interest, and why Child has refused contact with Father. The Juvenile Officer stated "I agree

---

[6] References to the Juvenile Officer include the counsel representing the Juvenile Officer in court.

10

we're not adjudicating whether or not she was physically abused, but again I think it's certainly relevant and provides context to the Court." Defense counsel reiterated that there was a lack of adequate pleading.

Later, defense counsel again objected to a line of questions about the aunt potentially abusing Child in the past. Defense counsel stated: "So this is really problematic because again this is not as this is pled that [Father] was present for physical abuse and failed to protect." These arguments were also brought up during defense counsel's motion to dismiss at the close of the Juvenile Officer's case.

In its judgment, the trial court discussed how Child came into care in 2017 solely because of Mother's actions. It noted that the 2017 case never involved an adjudication that Father abused or neglected Child. The court stated that parents cannot have parental rights terminated on a basis that was not alleged in the petition.

Now on appeal, the Juvenile Officer argues that the trial court misapplied the law in its findings pertaining to sections 211.447.5(2) and 211.447.5(5)(a). She focuses on the language that Child came into care only because of Mother, a finding of abuse or neglect was made only against Mother, and that those circumstances are not sufficient to terminate Father's parental rights under those two sections. The Juvenile Officer states that the trial court misapplied the law in finding that it cannot terminate parental rights under sections 211.447.5(2) or 211.447.5(5)(a) without a prior sustained finding against Father in the underlying abuse and neglect case.

11

We disagree with the Juvenile Officer's interpretation of the judgment. The trial court's judgment does not state that it cannot terminate parental rights without a prior sustained finding against Father. An issue at trial was whether the Juvenile Officer could present evidence that Father knew of and failed to protect Child from abuse. Defense counsel objected multiple times that the Juvenile Officer should be restricted to the allegations in the petition. The petition explicitly stated it was not alleging the factor in section 221.44.5(2)(c) regarding whether Father committed physical, emotion, or sexual abuse toward Child or should have known such acts were being committed.

The trial court found that it could not terminate parental rights for a reason not alleged in the petition. It cited multiple cases that support this statement. The trial court was correct that parental rights cannot be terminated on a basis not alleged in the petition. *In re S.M.H.*, 160 S.W.3d 355, 365 (Mo. banc 2005). The petition must fairly advise the parent of the allegations the parent needs to defend against. *Id*. at 366.

The Juvenile Officer argues that section 211.447.5(2) only requires that the child have been abused or neglected. "Section 211.447 does not limit termination of parental rights only to those grounds which arose prior to the juvenile court's assumption of jurisdiction." *Interest of K.T.K. v. Crawford Cnty. Juv. Off.*, 229 S.W.3d 196, 202 (Mo. App. S.D. 2007). "Certainly circumstances and behaviors arising after the juvenile court's assumption of jurisdiction are highly relevant in determining whether grounds for termination exist." *Id*. ("While … the juvenile court assumed jurisdiction of the children largely due to the neglect of Mother … , we hold that neglect on the part of Father,

12

arising after the juvenile court's assumption of jurisdiction, may form the basis for the termination of Father's parental rights….").

   "A finding that a child has been previously adjudicated abused is not sufficient to support termination of parental rights." *In re J.M.N.*, 134 S.W.3d 58, 68 (Mo. App. W.D. 2004). "[I]t is insufficient merely to point to past acts, note that they resulted in abuse or neglect and then terminate parental rights...." *Id*. (internal quotation marks omitted). "Past behavior can support grounds for termination, but only if it is convincingly linked to predicted future behavior." *Id*. (internal quotation marks omitted). "Moreover, [t]here must be some explicit consideration of whether the past acts provide an indication of the likelihood of future harm." *Id*. (internal quotation marks omitted). "The abuse or neglect sufficient to support termination under [section 211.447.5(2)] must be based on the conduct at the time of the termination, not just at the time jurisdiction was initially taken." *Id*.

   The Juvenile Officer argues that the trial court was mistakenly concerned that no count was alleged against Father in the underlying abuse and neglect matter. We find that the trial court could appropriately consider the full history of the case in evaluating whether the requirements of section 211.447.5 have been proven by clear and cogent evidence.

   The Juvenile Officer also notes evidence from the 2011 case and testimony that Father was present for and did not intervene and protect Child from abuse by his sister.

This evidence is more appropriately addressed in Point II where the Juvenile Officer argues that the court's judgment is not supported by substantial evidence.

We do not find that the trial court erroneously applied and misinterpreted the law. Even if it had, however, that would not result in a reversal of the trial court's judgment. "[T]his Court reviews for prejudice and not mere error." *Interest of C.E.B.*, 565 S.W.3d 207, 211 (Mo. App. S.D. 2018) (internal quotation marks omitted). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Id*. (internal quotation marks omitted). The Juvenile Officer has to show that the error committed by the trial court's mistake materially affected the merits of the termination action. *Interest of C.E.A.*, 646 S.W.3d 419, 430 (Mo. App. S.D. 2022). She must show actual prejudice. *Id*. The court did not base its denial on the alleged mistake of law. It went on to make detailed findings about all parts of the statutory grounds for termination. Any mistake of law was not the basis for the trial court's decision and was not prejudicial. *See Interest of K.R.*, 674 S.W.3d 9, 21 (Mo. App. W.D. 2023).

The point is denied.

**Point II**

In her second point on appeal, the Juvenile Officer claims the evidence presented supported termination of parental rights under sections 211.447.5(2), 211.447.5(3), and 211.447.5(5)(a). She states that the trial court's judgment was not supported by

14

substantial evidence. The Juvenile Officer argues that the trial court erred in denying the petition for termination of parental rights.

The Juvenile Officer's second point seeks to challenge the denial of each of the three independent statutory grounds which the trial court denied. "A point relied on violates Rule 84.04(d) when it groups together multiple, independent claims rather than a single claim of error, and a multifarious point is subject to dismissal." *Interest of D.T.H.*, 652 S.W.3d 738, 749 (Mo. App. W.D. 2022). "By asserting that the trial court erred with respect to three independent legal determinations, [the Juvenile Officer's second] point is multifarious and preserves nothing for review." *Id*. "We have the discretion to review non-compliant briefs *ex gratia* where the argument is readily understandable." *Interest of D.L.P.*, 638 S.W.3d at 91 n.2. "We cautiously exercise this discretion because each time we review a noncompliant brief *ex gratia*, we send an implicit message that substandard briefing is acceptable. It is not." *Id*.

To present a not-supported-by-substantial-evidence challenge, the Juvenile Officer's brief must complete three distinct analytical steps:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
(2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,
(3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

*In Interest of C.Z.N.*, 520 S.W.3d 828, 834 (Mo. App. S. D. 2017) (internal quotation marks omitted). The Juvenile Officer's point fails to follow this framework. Accordingly, "her arguments are analytically useless and provide no support for her challenge." *Id*. at 835 (internal quotation marks omitted).

"Moreover, it is significant that [the Juvenile Officer] bore the burden of proving the existence of a statutory ground for termination of … parental rights." *Interest of A.M.R.*, 673 S.W.3d at 873. "When the burden of proof is placed on a party for a claim that is *denied*, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence." *Id*. (internal quotation marks omitted). "If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party." *Id*. (internal quotation marks omitted). "Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it."[7] *Id*. at 873-74 (internal quotation marks omitted). "Consequently, substantial

---

[7] Though not raised by the Juvenile Officer in her brief, section 211.447.5(5)(b)e states that Father is presumed to be unfit upon a showing that Child has been under the jurisdiction of the juvenile court and in foster care for at least fifteen of the twenty-two months prior to the filing of the petition. The transcript states that Child returned to live with Mother in June 2020. She was removed from Mother's home in August 2020. The petition was filed in December 2021. Given those dates, it seems as though that presumption applies to Father. We note that it was not pled in the amended petition and the presumption is not mentioned in the Juvenile Officer's brief. Assuming it does apply, Father had the burden of overcoming the presumption of unfitness. *In re D.T.L.*, 422 S.W.3d 465, 467 (Mo. App. S.D. 2014). We find he did so when we discuss this ground for termination later in this point.

16

evidence supporting a judgment against the party with the burden of proof is not required or necessary." *Id*. at 874 (internal quotation marks omitted).

In deciding whether to terminate parental rights under Section 211.447.5(2), the trial court must make findings on four factors. "[T]here is no statutory requirement that a factor listed under a ground for termination be proven by 'clear, cogent, and convincing evidence;' rather, that burden of proof applies to the ground for termination." *In Interest of T.T.G. v. K.S.G.*, 530 S.W.3d 489, 495 (Mo. banc 2017) (internal quotation marks omitted). "Factors (a) though (d) are simply categories of evidence to be considered along with other relevant evidence, rather than separate grounds for termination in and of themselves." *Id*. (internal quotation marks omitted).

Of the four factors in section 211.447.5(2), the Juvenile Officer only alleged and the court only made detailed findings with respect to (d):

> No evidence was presented that showed that the father has repeatedly and continuously failed, although physically and financially able to do so, to provide the child with adequate food, clothing, shelter, education, and other care necessary for her physical, mental or emotional health and development. Specifically, the father had contact with the child in the past before the child began refusing contact with the father in 2020. Further, since 2020 the father has requested to have contact and visitation with the child and has provided support for the child's well-being in the form of food, clothing, supplies, and gifts as well as made regular child support payments…. Evidence that a parent has provided some contribution, even if not fully sufficient for all of the child's support demonstrates the parent's intent to continue the parent-child relationship and mitigates against termination. … Additionally, there was no evidence of the father's past conduct relating to support of the child, prior to the child's removal from the mother, of failing to provide financially for the child. …

17

The Juvenile Officer focuses on evidence that would support termination of Father's parental rights. That is against our standard of review.

The Juvenile Officer also states that some of the trial court's findings are contrary to the evidence presented. Specifically, the trial court found that since 2020 Father had provided support for Child. The Juvenile Officer states that Father stopped providing support in terms of food, clothing, supplies, or gifts in 2019. Father testified of his desire to provide for and support Child but stated it was hard when he was not allowed to see her. He paid child support until the State stopped collecting it because of Father's disability benefits. The foster care case manager testified that she was assigned to Child's case in 2020. She testified that she talked to Father about how gifts are not enough. She also testified:

Q. Okay. So her father's desire to have contact and even provide for her, provide gifts she won't take, right?

A. No.

Q. But isn't that a good thing?

A. I mean, gifts are a good thing for a child, but that's not the most important piece especially for a kid like [Child] that's not what she cares about.

Q. Right. But gifts are sometimes a sign that somebody cares, right?

A. Yes.

Q. Okay. And [Father] has made it clear that he cares he wants to see her, he wants to provide her, right?

A. Yes, he has.

18

We find that the court's findings in denying the petition with respect to section 211.447.5(2) are supported by substantial evidence.

In denying the petition with respect to section 211.447.5(3), the court found that the conditions which led to the assumption of jurisdiction do not still exist since those conditions were solely Mother's actions. It found that conditions of a potentially harmful nature did not continue to exist regarding Father. Father had made progress in complying with the social services plan. He completed a psychological examination, participated in individual counseling, and engaged in parent education services. The court found that the largest barrier to reunification was Child's refusal to visit with him. The court found no evidence that contact with Father would be so harmful to Child as to require termination. It faulted the Children's Division for not offering Father any visits with Child or family therapy with Child since 2020. The court concluded that Father has shown a strong interest in Child and nothings suggests that Father's contact with Child would be harmful to Child's physical, mental or emotional wellbeing.

Again, the Juvenile Officer's argument on appeal is a recitation of evidence that could have supported termination of parental rights. That is against our standard of review. We find that the court's findings in denying the petition with respect to section 211.447.5(3) are supported by substantial evidence.

In denying the petition with respect to section 211.447.5(5)(a), the court found that Father is not unfit. It noted that Child came into custody because of Mother's actions,

19

that Father has participated in all requested services, and that Father has been denied contact with Child. The court stated that there was no evidence of any abuse or neglect of a duration and nature that rendered Father unfit for the reasonably foreseeable future. Again, the Juvenile Officer's argument on appeal focused on evidence that could have supported termination of Father's parental rights. That is against our standard of review. We find that the court's findings in denying the petition with respect to section 211.447.5(5)(a) are supported by substantial evidence.

"The bond between parent and child is a fundamental societal relationship." *In re K.A.W.*, 133 S.W.3d 1, 12 (Mo. banc 2004). "A parent's right to raise [his] children is a fundamental liberty interest protected by the constitutional guarantee of due process." *Id.* "It is one of the oldest fundamental liberty interests recognized by the United States Supreme Court." *Id.* "The fundamental liberty interest of natural parents in raising their children does not evaporate simply because they have not been model parents or have lost temporary custody of their children to the State." *Id.* "Those faced with forced dissolution of their parental rights have a more critical need for protections than do those resisting state intervention into ongoing family affairs." *Id.* "The termination of parental rights has been characterized as tantamount to a civil death penalty." *Id.* (internal quotation marks omitted). "It is a drastic intrusion into the sacred parent-child relationship." *Id.* (internal quotation marks omitted). "Statutes that provide for the termination of parental rights are strictly construed in favor of the parent and preservation of the natural parent-child relationship." *Id.*

"A trial court is free to disbelieve any, all, or none of th[e] evidence, and [t]he appellate court's role is not to re-evaluate testimony through its own perspective." *Interest of A.M.R.*, 673 S.W.3d at 873 (internal quotation marks omitted). "The trial court receives deference on factual issues because it is in a better position not only to judge the credibility of the witnesses and the persons directly, but also their sincerity and character and other intangibles which may not be completely revealed by the record." *Id*. (internal quotation marks omitted). Here, it appears that the trial court found credible the testimony supporting denial of the petition.

The point is denied.

### Point III

In her third point on appeal, the Juvenile Officer claims the trial court erred in finding that termination of parental rights was not supported by substantial evidence. She states that the trial court abused its discretion. The Juvenile Officer argues that the evidence presented supported termination of parental rights being in Child's best interest pursuant to section 211.447.7.

We do not address the best interest of Child until the Juvenile Officer demonstrates that grounds for termination exist. *Interest of T.M.P.*, 667 S.W.3d 124, 135 (Mo. App. E.D. 2022). Because we have found grounds for termination do not exist, we need not discuss this point on appeal. The point is denied.

## Conclusion

The judgment is affirmed.

_____
Anthony Rex Gabbert, Judge

All concur.