32 S.W.3d 804 (2000)
In the Interest of T.A.S.
Juvenile Officer, Boone County, Respondent,
v.
P.S.L. (Natural Mother), Appellant,
B.R.S. (Natural Father), Defendant.
No. WD 58229.
Missouri Court of Appeals, Western District.
December 12, 2000.
*807 Susan M. Venturella, Columbia, for appellant.
Elizabeth K. Magee, Columbia, for respondent.
Glen R. Ehrhardt, Columbia, for guardian ad litem.
Before BRECKENRIDGE, P.J., and ULRICH and HOWARD, JJ.
HOWARD, Judge.
P.S.L., natural mother ("mother") appeals from the trial court's termination of her parental rights to T.A.S., a minor child. In her seven points on appeal, the mother contends the trial court erred in terminating her parental rights on the grounds of failure to rectify and parental unfitness, and in finding that termination was in T.A.S.'s best interests.
We reverse and remand.

Facts
T.A.S. was born on January 15, 1990. Her natural mother is P.S.L., and her natural father is B.R.S., Sr. The mother and the father had a son, B.R.S., Jr., born November 24, 1988. On April 17, 1991, B.R.S., Jr. was made a ward of the court. On November 6, 1995, the court entered an order terminating the mother's and father's parental rights to B.R.S., Jr. On appeal, this court reversed the termination order and remanded the case to the Boone County Circuit Court. In Interest of B.R.S., 937 S.W.2d 773 (Mo.App. W.D.1997). On February 14, 1997, the court again entered an order terminating parental rights, and the order was affirmed by this court on appeal. In Interest of B.R.S., Jr., 950 S.W.2d 335 (Mo.App. W.D.1997). In the case at bar, the court took judicial notice of the orders of termination in the proceeding involving B.R.S., Jr.
The mother has a son, F.D., Jr., born in September 1991, while the mother and father were separated. The mother and the father were divorced in February 1993. The mother married L.L. in October 1993, *808 and they separated in January 1994. While the mother was incarcerated, she gave birth to a daughter in September 1994, and the daughter died in October 1994 while in the custody of her father, S.B. The mother married S.B. in December 1994 after her divorce from L.L.
The mother has been incarcerated since the inception of juvenile court proceedings involving T.A.S. On December 13, 1995, T.A.S. was found to be within the jurisdiction of the court. On February 26, 1996, the court entered an order of disposition continuing T.A.S. in the custody and under the supervision of the Division of Family Services ("DFS") for placement with the father. On July 22, 1996, the court terminated its jurisdiction over T.A.S.
On February 27, 1997, the juvenile officer filed a petition alleging that T.A.S. was in need of care and treatment pursuant to § 211.031.1(1) RSMo. The trial court took judicial notice of proceedings in the present case beginning on February 27, 1997, with the protective custody order of that date. The court also took judicial notice of the March 26, 1997 and July 21, 1999 orders finding the allegations of the February 27, 1997 petition, as amended by the juvenile officer, to be true. On March 26, 1997, based on the February 27, 1997 petition, T.A.S. was found to be within the jurisdiction of the court and was made a ward of the court. On May 12, 1997, the court entered an order of disposition continuing T.A.S. in the custody and under the supervision of DFS for placement in foster care.
On June 19, 1998, the juvenile officer filed a petition to terminate the parental rights of the mother and the father to T.A.S. On November 23, 1998, the juvenile officer filed a first amended petition for termination. The termination petition was further amended by the juvenile officer at a hearing on July 19, 1999.
The juvenile officer presented two witnesses: Wendy Morgan, a licensed clinical social worker who had worked with T.A.S. since October 1995, and Michelle Croner, the DFS case manager for T.A.S. from March 1997 to June 1998. The mother also testified. The witnesses' testimony will be discussed as warranted by the points on appeal.
On December 6, 1999, the trial court entered a judgment terminating the parental rights of the mother and father on the grounds of failure to rectify[1] and parental unfitness. This appeal follows.

Standard of Review
We will affirm the trial court's judgment terminating parental rights unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. In re J.W., 11 S.W.3d 699, 703 (Mo.App. W.D.1999). We view the facts and all reasonable inferences arising therefrom in the light most favorable to the trial court's order. Id. We defer to the trial court on issues of witness credibility and choosing between conflicting evidence. In Interest of T.H., 980 S.W.2d 608, 611 (Mo.App. W.D.1998).

Argument
An order of termination must be supported by clear, cogent and convincing evidence that at least one of the grounds set out in § 211.447[2] exists, and the termination is in the child's best interests. Id. "Clear, cogent and convincing evidence in an action for termination of parental rights is evidence that instantly tilts the scales in favor of termination when weighed against *809 the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." In Interest of J.M., 815 S.W.2d 97, 101 (Mo.App. W.D.1991).

Point I
The mother's first point on appeal is that the trial court erred in terminating her parental rights for failure to rectify, because the court did not comply with the termination of parental rights statute in that 1) the court's finding as to the terms of a social service plan entered into by DFS and her and the extent to which the parties have made progress in complying with those terms is erroneous and confusing such that it is tantamount to a failure to make a finding on this factor as required by § 211.447.2(3)(a); 2) the court failed to make a finding as to the success or failure of the efforts of the juvenile officer, DFS, or other agency to aid her on a continuing basis in adjusting her circumstances or conduct to provide a proper home for T.A.S., as required by § 211.447.2(3)(b); 3) the court failed to make a finding as to the existence of a chemical dependency which prevents her from providing the necessary care, custody and control over T.A.S., as required by § 211.447.2(3)(d); 4) although the court determined that her contact with T.A.S. was a factor which was appropriate and applicable to the case, the court failed to make a finding as to the extent to which she has maintained visitation with T.A.S., as required by § 211.447.3(2); 5) although the court determined that the extent of her payment for the cost, care and maintenance of T.A.S. was a factor which was appropriate and applicable to the case, the court failed to make a finding as to her financial ability to pay such costs, as required by § 211.447.3(3).
We first address the mother's arguments concerning § 211.447.2. Section 211.447.2 provided, in relevant part, as follows:
The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer, or in adoption cases, by a prospective parent, if the court finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:
(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:
(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to *810 consistently provide such care, custody and control....
"The court is required to make specific findings on each of these four factors. If a factor is not relevant to the case, the court should state why the given factor is not relevant." In Interest of H.R.R., 945 S.W.2d 85, 89 (Mo.App. W.D.1997) (citations omitted). Strict and literal compliance with the statutory requirements is necessary in termination of parental rights cases. Id. at 87. "Statutory mandates to make findings may not be overlooked on appeal." In re A.P., 988 S.W.2d 59, 62 (Mo.App. S.D.1999).
The mother argues that the court's finding regarding § 211.447.2(3)(a) is so insufficient that it is tantamount to a failure to make a finding on that factor. The trial court stated in its conclusions of law that "[t]here was no additional evidence, other than the previous findings by the Court regarding the mother's lack of cooperation with the terms of the social service plan entered into between the mother and the Division of Family Services." Apparently the "previous findings" the court refers to are its findings regarding the mother's lack of cooperation with a court-ordered plan entered on June 24, 1991. We find that this finding is arguably minimally sufficient.
The mother next argues that the court failed to make a finding pursuant to § 211.447.2(3)(b). The court did not make a finding on this factor in the same section of its conclusions of law where it entered its conclusions regarding § 211.447.2(3)(a), (c), and (d). Our review of the trial court's judgment indicates that the only findings directly related to the Division's efforts to aid the mother are that 1) the mother failed to cooperate with parent aide services as arranged by DFS and ordered by the court on June 24, 1991; 2) since November 1990, DFS has referred and offered the mother a variety of additional services to facilitate her reunification with T.A.S., including, but not limited to parents as teachers services, city health nurse visits, individual counseling, GED, job training services, and parenting classes; and 3) the mother initially informed DFS of her desire to receive these services, but failed to follow through with and complete said services. We find that the court's finding with regard to § 211.447.2(3)(b) is also arguably minimally sufficient.
In regard to § 211.447.2(3)(c), the trial court found that "[t]here was no evidence presented that the mother has a mental condition which renders her unable to provide proper care, custody and support to the juvenile." The mother does not contest the sufficiency of the court's finding under this factor, and we conclude that this finding is sufficient.
The mother further argues that the court failed to make a sufficient finding pursuant to § 211.447.2(3)(d). The court found that "[t]here was no additional evidence presented regarding the mother's chemical dependency other than the testimony of [T.A.S.'s] therapist, as noted above." The evidence to which the court refers is the testimony of Wendy Morgan that based on the mother's history of chemical dependency, she would expect the mother to remain sober for at least one year outside of the Department of Corrections facility and to work through the recovery program at the halfway house before she would be ready to work on issues of parenting T.A.S. We find that this finding is sufficient.
We next discuss the mother's arguments in regard to § 211.447.3. Section 211.447.3 provided as follows:
When considering whether to terminate the parent-child relationship pursuant to subdivision (1), (2), (3), (4) or (5) of subsection 2 of this section, the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case:
(1) The emotional ties to the birth parent;

*811 (2) The extent to which the parent has maintained regular visitation or other contact with the child;
(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;
(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;
(5) The parent's disinterest in or lack of commitment to the child;
(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;
(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.
Section 211.447.3 "leaves to the trial court's discretion the decision to make findings on the factors it deems applicable to the case. The scope of appellate review is limited to an abuse of that discretion." In Interest of R.H.S., 737 S.W.2d 227, 238 (Mo.App. W.D.1987).
The mother argues that although the court determined that her contact with T.A.S. was a factor which was appropriate and applicable to the case, the court failed to make a finding as to the extent to which she has maintained visitation with T.A.S., as required by § 211.447.3(2). We agree. In In re N.M.J., 24 S.W.3d 771, 783 (Mo.App. W.D.2000), we recently held that the trial court erred in not making findings on certain factors in § 211.447.6 RSMo Supp.1998, where "they were appropriate and applicable in that there was evidence presented on them, which arguably would favor the mother." We stated that "without such findings we cannot be assured that the juvenile court properly considered these ... factors in deciding whether to terminate the mother's parental rights." Id. In the present case, the only finding the trial court made in regard to this factor is that the mother writes to T.A.S. approximately one time per month. There was evidence that the mother has maintained regular visitation with T.A.S., which would, if believed, favor the mother. Therefore, this factor was appropriate and applicable, and absent any finding on this factor, we cannot determine whether the trial court properly considered this factor in its decision to terminate the mother's parental rights.
The mother next argues that although the court determined that the extent of her payment for the cost, care and maintenance of T.A.S. was a factor which was appropriate and applicable to the case, the court failed to make a finding as to her financial ability to pay such costs, as required by § 211.447.3(3). The trial court found that the mother "has failed to contribute financially towards the care and maintenance of [T.A.S.] while [T.A.S.] has been in foster care." However, the trial court did not make a finding as to whether the mother was financially able to contribute to the cost of the care and maintenance of T.A.S. We find that the trial court was required to make a finding on this, and on remand is directed to do so.
Point I is granted in part and denied in part.

Point II
The mother's second point on appeal is that the trial court erred in terminating her parental rights because termination was not supported by clear, cogent and convincing evidence, in that the record reflects that 1) termination under failure to rectify was improperly based on past events which did not exist as conditions at the time of the assumption of jurisdiction *812 in this case; 2) her incarceration was the only condition that existed at the time of the assumption of jurisdiction over T.A.S.; 3) her incarceration is likely to be rectified in the near future so that T.A.S. can be returned to her; 4) continuation of the parent-child relationship does not greatly diminish T.A.S.'s prospects for an early integration into a stable and permanent home; and 5) the juvenile officer did not adduce sufficient evidence to prove that any of the statutory factors exist in this case.
In regard to § 211.447.2, the trial court found as follows: 1) T.A.S. had been under the jurisdiction of the juvenile court for a period in excess of one year prior to the filing of the petition for termination of parental rights; 2) the conditions which led to the assumption of jurisdiction still persist and there is little likelihood that these conditions will be remedied at an early date so that T.A.S. can be returned to the parents in the near future, and continuation of the parent-child relationship greatly diminishes T.A.S.'s prospects for early integration into a stable and permanent home; 3) there was no additional evidence, other than the previous findings by the court, regarding the mother's lack of cooperation with the terms of the social service plan entered into between the mother and DFS; 4) there was no evidence presented that the mother has a mental condition which renders her unable to provide proper care, custody and support to T.A.S.; and 5) there was no additional evidence presented regarding the mother's chemical dependency other than the testimony of the juvenile's therapist, as noted above.
The mother does not dispute that T.A.S. was under the jurisdiction of the juvenile court for a period in excess of one year prior to the filing of the petition for termination of parental rights, nor does she dispute that one of the conditions that led to the assumption of jurisdiction, namely her incarceration, still existed. However, the mother argues that an analysis of the factors the court is required to consider, the absence of which mitigates against termination, reveals that there is not clear, cogent and convincing evidence to support the termination on the basis of failure to rectify.
The mother argues that the only "condition" that led to the assumption of jurisdiction that still exists is her incarceration. The mother contends that she did not have the ability to rectify this condition, and incarceration cannot serve as the only basis for termination. She further contends that termination was based on events that occurred before the assumption of jurisdiction over T.A.S.
Section 211.447.2(3) provides that a court may find either that the conditions which led to the assumption of jurisdiction still persist or conditions of a potentially harmful nature continue to exist. However, in the present case, the trial court found only that "[t]he conditions which led to the assumption of jurisdiction still persist." It did not make a finding that conditions of a potentially harmful nature continue to exist. The trial court did not state in its judgment, and it is unclear to this court, which conditions the trial court found led to the assumption of jurisdiction, and which of those conditions the trial court found still persisted. Therefore, it is impossible for us to address the mother's argument. On remand, the trial court is directed to make a finding as to what conditions that led to the assumption of jurisdiction still persist.
The mother next argues that there was no evidence that her incarceration was not likely to be remedied at an early date, as she was scheduled to be released in 2000. However, as previously discussed, we cannot address this argument because we cannot determine from the judgment what conditions the trial court determined led to the assumption of jurisdiction, and which of those conditions the trial court found still persisted.
*813 The mother further argues that there was no evidence that continuation of the parent-child relationship greatly diminished T.A.S.'s prospects for early integration into a stable and permanent home. However, Wendy Morgan testified that keeping T.A.S. in her current placement while allowing the mother to prepare herself to provide a stable home to T.A.S. would "threaten and hamper potential adoptive situations." She also testified, and reiterated later in her testimony, that she believes T.A.S. is adoptable. We find that there was sufficient evidence to support the trial court's finding.
The mother next argues that the juvenile officer has failed to prove by clear, cogent and convincing evidence that any of the factors in § 211.447.2(3) exist, and the absence of all four factors should preclude termination on the basis of failure to rectify. We discuss the four factors in order. To the extent the mother argues that the findings themselves are insufficient, this argument has already been addressed in Point I.
The mother contends that the trial court made an erroneous finding in regard to "the terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms," pursuant to § 211.447.2(3)(a). We have already discussed the sufficiency of this finding. Furthermore, a social service plan is no longer mandatory, nor will its absence require a reversal in a termination of parental rights case. In Interest of D.B. v. L.B.A., 916 S.W.2d 430, 434 (Mo.App. E.D.1996).
The mother next claims that there was not clear, cogent and convincing evidence that § 211.447.2(3)(b) weighs in favor of termination. We find that the trial court's findings in this regard, as discussed in Point I, are supported by the evidence. In any case, "absence of treatment or services is no defense to a termination proceeding." Id.
Concerning the "mental condition" factor in § 211.447.2(3)(c), as previously stated, the court found that there was no evidence that the mother had a mental condition.
As for the court's findings concerning chemical dependency under § 211.447.2(3)(d), the court found that there was no evidence of chemical dependency, other than the testimony of T.A.S.'s therapist, Wendy Morgan. Ms. Morgan's testimony, as set forth in Point I, constitutes sufficient evidence for the trial court to find that § 211.447.2(3)(d) weighed in favor of termination.
Point II is granted in part and denied in part.

Point III
The mother's third point on appeal is that the trial court erred in terminating her parental rights on the basis of parental unfitness because she was not presumed to be unfit to be a party to the parent and child relationship in that her parental rights to another child were not involuntarily terminated within the three-year period immediately preceding the adjudication in the instant case.
Section 211.447.2 provided, in relevant part, as follows:
The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer, or in adoption cases, by a prospective parent, if the court finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:
(6) The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse, including but not limited to, abuses as defined in section 455.010, RSMo, child abuse or drug abuse before the child or of specific conditions directly relating to the parent *814 and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child. It is presumed that a parent is unfit to be a party to the parent-child relationship upon a showing that within a three-year period immediately prior to the termination adjudication, the parent's parental rights to one or more other children were involuntarily terminated under subdivision (1), (2), (3) or (4) of this section or similar laws of other states.

(Emphasis added.)
The mother's parental rights to her son, B.R.S., Jr., were originally terminated by order of the Circuit Court of Boone County on November 6, 1995. The mother appealed to this court, which reversed and remanded on February 4, 1997, with instructions that the trial court make additional findings. In Interest of B.R.S., 937 S.W.2d 773 (Mo.App. W.D.1997). On remand, the trial court made findings in compliance with this court's mandate, in an order dated February 14, 1997. The mother appealed that order, which terminated her rights pursuant to § 211.447.2(3), and we affirmed on September 2, 1997. In Interest of B.R.S., Jr., 950 S.W.2d 335 (Mo.App. W.D.1997).
In the case at bar, the trial court found that the mother's parental rights to B.R.S., Jr. were involuntarily terminated on February 14, 1997. Section 211.447.2(6) provided that for the presumption of parental unfitness to apply, there must be a showing that "within a three-year period immediately prior to the termination adjudication, the parent's parental rights to one or more other children were involuntarily terminated...." The mother contends that November 6, 1995 is the date on which the three-year period in § 211.447.2(6) began. We disagree.
"Reverse" is defined as "[t]o overthrow, vacate, set aside, make void, annul, repeal, or revoke.... To reverse a judgment means to overthrow it by contrary decision, make it void, undo or annul it for error." BLACK'S LAW DICTIONARY 1319 (6th ed.1990). Thus, on February 4, 1997, when this court reversed the November 6, 1995 order, that order was no longer a valid termination of the mother's parental rights.[3] We find that the date on which the three-year period in § 211.447.2(6) began is February 14, 1997, the date the trial court terminated the mother's parental rights after remand by this court.
The judgment terminating parental rights in the present case was entered on December 6, 1999, within three years of the February 14, 1997 termination of the mother's rights in regard to B.R.S., Jr.
Point III is denied.

Point IV
The mother's fourth point on appeal is that the trial court erred in terminating her parental rights on the basis of parental unfitness because the court did not comply with § 211.477.5,[4] regarding the contents of an order of termination, in that the court did not make the required statutory finding that she was unfit to be a party to the parent-child relationship, nor did it identify upon which of the statutory bases it found unfitness.
In regard to the mother's unfitness, the trial court found that the "mother *815 is presumed unfit to be a party to the parent-child relationship in that ... mother's parental rights to her son, [B.R.S., Jr.], were involuntarily terminated on February 14, 1997." "The presumption of unfitness is rebuttable and can be overcome by evidence that the circumstances that led to the termination of the parent's parental rights in the other child no longer exist or that the parent is no longer unfit." In re A.H., 9 S.W.3d 56, 61 (Mo.App. W.D.2000). Aside from any finding that the parent is presumed unfit, § 211.447.2(6) clearly requires the trial court to determine that the parent is currently unfit. On remand, the trial court is directed to enter a finding as to whether the mother is currently unfit to be a party to the parent and child relationship. Such a determination clarifies that the presumption of unfitness was not overcome.
Point IV is granted.

Point V
The mother's fifth point on appeal is that the trial court erred in terminating her parental rights on the basis of parental unfitness by statutory presumption because she successfully rebutted the presumption, in that 1) she has maintained visitation and contact with T.A.S., 2) she has completed a parenting class; 3) she has taken an anger management class; 4) she has received treatment for problems with alcohol and no longer drinks; and 5) she is scheduled to be released from incarceration in the near future.
Because we are remanding for further findings on termination on the ground of unfitness, we do not yet reach the issue of whether the mother successfully rebutted the presumption of unfitness.

Point VI
The mother's sixth point on appeal is that the trial court erred in terminating her parental rights because the court's finding that termination was in T.A.S.'s best interests is against the weight of the evidence in that the record reflects, among other things, that 1) T.A.S. has emotional ties to her; 2) she has maintained regular visitation and written contact with T.A.S.; 3) she has contributed to the care and maintenance of T.A.S. to the extent of her financial ability to do so; 4) she is committed to T.A.S.; 5) her felony conviction is not of such a nature that T.A.S. will be deprived of a stable home for a period of years; and 6) there are services available which could bring about her parental adjustment to enable T.A.S.'s placement with her within an ascertainable time.
"The court may reach the issue of the best interests of the child[ ] only after it has made a determination that one or more of the statutory grounds for termination exists." In Interest of J.A.R., 968 S.W.2d 748, 750 (Mo.App. W.D.1998), quoting In Interest of M.H., 859 S.W.2d 888, 896 (Mo.App.1993). As in Point V, because we remand for further findings on both grounds of termination, we do not yet reach the issue of whether the termination was in T.A.S.'s best interests.

Point VII
The mother's seventh point on appeal is that the trial court erred in terminating her parental rights because the court ordered termination solely based upon her incarceration in violation of § 211.447.3(6), in that the record reflects, among other things, that 1) she has fulfilled her obligation to provide T.A.S. with a continuing relationship through communication and visitation; 2) the DFS case manager based her recommendation to terminate her parental rights on her incarceration; 3) her incarceration is preventing her from contributing more to the cost, care and maintenance of T.A.S.; 4) her incarceration is preventing her from having more regular contact with T.A.S.; and 5) her incarceration is preventing her from starting the clock to run on any post-institutional time limits necessary to achieve a stable recovery.
*816 As previously discussed, the trial court's judgment is unclear as to the basis for termination on the ground of failure to rectify. Therefore, because we remand for clearer findings on which "conditions which led to the assumption of jurisdiction still persist," we do not address this point.
The trial court's judgment terminating the mother's parental rights to T.A.S. is reversed and remanded, with directions that the trial court consider the record herein and enter findings upon the record consistent with this opinion.
BRECKENRIDGE, P.J., and ULRICH, J., concur.
NOTES
[1] This refers to § 211.447.2(3) RSMo Cum.Supp.1997.
[2] Section 211.447 was amended effective July 1, 1998, between the filing of the petitions for termination and the entry of the judgments. The trial court correctly made its findings of fact and conclusions of law under § 211.447 RSMo Cum.Supp.1997, and we conduct our review of the mother's appeal under that version of the statute. In re C.M.D., 18 S.W.3d 556, 561 (Mo.App. W.D.2000); In re S.L.J., 3 S.W.3d 902, 906 (Mo.App. S.D.1999).
[3] We also note that if we were to agree with the mother that her parental rights were terminated on November 6, 1995, there would actually be two dates of termination: November 6, 1995 and February 14, 1997. We find that the legislature would not have intended to cause such uncertainty and ambiguity.
[4] Section 211.477.5 RSMo 1994 provides, in relevant part, that "[o]rders of the court issued pursuant to sections 211.442 to 211.487 shall recite the jurisdictional facts, factual findings on the existence of grounds for termination and that the best interests of the child are served by the disposition stated in the order."