**In the Interest of D.L.W. and J.L.C.**

**Nos. 25718, 25719.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 18, 2004.

Rebecca M. Burns, Poplar Bluff, for appellant Robyn Ward.

No appearance, for respondent.

JOHN E. PARRISH, Judge.

This is a consolidated appeal of two termination of parental rights cases. The trial court terminated parental rights of Robyn Charlene Ward (mother) to D.L.W. in No. 25718 and to J.L.C. in No. 25719.[1] Both judgments are affirmed.

### D.L.W.

D.L.W. was born June 25, 1996. He was removed from mother's custody "around December of 1998" after mother's parents contacted a juvenile officer with concerns over his safety and well being in

---

1. Parental rights of the natural father of each child were also terminated. Neither father appealed.

mother's home. D.L.W. was returned to her custody in March 1999.

D.L.W. was removed from mother's custody again in July 1999 based on allegations of neglect. At the hearing on the petition, the juvenile court found, based on mother's admissions, that mother had neglected or refused to provide care and support for the child. D.L.W. was placed in the custody of Division of Family Services (D.F.S.).

In July 2000 mother was convicted, on the basis of a guilty plea, of felony child abuse that resulted from an altercation between her and a seven-year old stepson. At the time of the altercation, mother was pregnant with J.L.C. She was sentenced to two years' confinement. Execution of the sentence was suspended. Mother was placed on probation. A condition of her probation was that she be confined in the county jail for 60 days. Other conditions of probation were that mother participate in counseling and have no unsupervised contact with minor children.

D.L.W. has remained in the same foster care home since placed in custody of D.F.S. in July 1999. Petition to terminate parental rights was filed February 8, 2002. The hearing on the petition was held April 29, 2003. Judgment terminating parental rights was entered May 28, 2003.

### J.L.C.

J.L.C. was born October 20, 2000. D.F.S. took custody of J.L.C. at birth based on allegations that mother suffered from paranoid schizophrenia and had been convicted of felony child abuse of another child. Petition to terminate parental rights was filed February 8, 2002. Hearing on the petition was held April 29, 2003. Judgment terminating parental rights was entered May 28, 2003.

### Termination of Parental Rights Proceedings—Scope of Review

Section 211.447[2] authorizes proceedings to terminate parental rights. It is a two-step process. *See In the Interest of S.J.H.*, 124 S.W.3d 63, 66 (Mo.App.2004). Statutory grounds for termination of parental rights must first be proven by clear, cogent and convincing evidence. *Id.* If this occurs, the issue becomes whether termination of parental rights is in the child's best interests. *Id.*

Appellate review of a trial court's determination that the best interests of a child are served by termination of parental rights is undertaken to determine if there has been an abuse of judicial discretion. *Id.* "Judicial discretion is abused when a court's ruling is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *In re A.S.*, 38 S.W.3d 478, 486 (Mo.App.2001). The judgment that statutory grounds for termination of parental rights exist will be reversed only if it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *In Interest of S.J.H.*, *supra.*

### Issues on Appeal

In No. 25718 the trial court found that D.L.W. had been abused by mother; that he had been under the jurisdiction of the juvenile court for a period of more than one year and the conditions that led to the assumption of jurisdiction by the juvenile court continued to exist; that there was little likelihood that those conditions would be remedied at an early date so that the child could be returned to mother in the

---

**2.** References to statutes are to RSMo 2000.

near future. *See* §§ 211.447.4(2) and 211.447.4(3).

In No. 25719 the trial court found that J.L.C. had been under the continuing jurisdiction of the court since October 23, 2000, three days after his birth; that this was a period in excess of one year and conditions that led to the juvenile court taking jurisdiction of J.L.C. still persisted and conditions of a potentially harmful nature continued to exist; that there was little likelihood those conditions would be remedied at an early date so that the child could be returned to mother in the near future. § 211.447.4(3).

Point I is directed to the judgment that terminated mother's parental rights to D.L.W. Point II is directed to the judgment terminating her parental rights to J.L.C. The points are not models of clarity. Each consists of a paragraph alleging error followed by three subparagraphs, A, B and C, directed to findings in the judgment on disparate issues.

Point I contends the trial court erred in terminating parental rights to D.L.W. "because [its] finings [sic] were each against the weight of evidence in that the evidence was not clear, cogent and convincing and the evidence did not illustrate that adjudication to be in [D.L.W.'s] best interest." The three subparagraphs that follow are narrative recitations stating that particular findings were not proven by clear, cogent and convincing evidence. Subparagraph A questions the finding that mother "has a mental condition that is either permanent or that has no reasonable likelihood of being reversed" which renders her incapable of providing care for D.L.W.

Subparagraph B questions the finding that following the period of more than one year that D.L.W. has been under the jurisdiction of the court, "the conditions which led to jurisdiction still persist." Mother asserts with respect to that finding "that there is substantial evidence that anger

control is no longer problematic"; that "she has rectified the causes of removal through performance of services plans filed by DFS."

Subparagraph C is also directed to the trial court's finding that conditions that led to its supervision still exist. It questions the trial court's finding because mother "has completed every program suggested by DFS to rectify the situational conditions and all incidents are far removed in time."

■ Point I contains multifarious claims in that it groups multiple allegations of incidents of error into a single point relied on where the incidents do not relate to a single issue. As has been pointed out in numerous cases, this violates Rule 84.04(d). *See, e.g., Patterson v. Waterman,* 96 S.W.3d 177, 179 n. 4 (Mo.App. 2003); *Cooper v. Bluff City Mobile Home Sales, Inc.,* 78 S.W.3d 157, 167 (Mo.App. 2002); *Bydalek v. Brines,* 29 S.W.3d 848, 857 (Mo.App.2000). The general rule is that such a point preserves nothing for review. *Cooper, supra.*

Based on the assertion in the main paragraph of Point I that the evidence did not support a finding that termination of parental rights as to D.L.W. were in the child's best interests and the statements of counsel at oral argument, this court perceives that to be the thrust of Point I. That issue will be addressed notwithstanding the deficiencies of Point I. Further, in view of the gravity of a decision related to parental rights, the contentions in subparagraphs A, B and C relating to the trial court's findings regarding mother's mental condition and persistence of conditions that led to the juvenile court's jurisdiction of the child after more than one year have been gratuitously reviewed. The trial court's judgment is reviewable under Rule 84.13(d). This court concludes that the findings about which subparagraphs A, B

and C complain are supported by substantial evidence; that no error of law appears. Further opinion as to those issues would serve no precedential value. Those claims are denied in compliance with Rule 84.16(b).

■ "The determination of what is in a child's best interests is an ultimate conclusion for the trial court based on the totality of the circumstances." *In re K.J.K.*, 108 S.W.3d 62, 68 (Mo.App.2003). It is a subjective assessment of evidence that is not reweighed by appellate review. *In re K.K.J.*, 984 S.W.2d 548, 554 (Mo.App.1999). As stated, *supra*, appellate review of evidence with respect to a child's best interest is undertaken to determine if an abuse of judicial discretion occurred.

■ In determining it was in the best interests of D.L.W. to terminate mother's parental rights, the trial court found that additional services would not likely bring about lasting parental adjustment that would enable return of D.L.W. to mother within an ascertainable period of time. It further concluded that, evidenced by mother having deliberately assaulted her stepson for which she was convicted criminally, D.L.W. would be subjected to substantial risk of physical harm if returned to the custody of mother.

Mother has a history of problems with anger management and violence. She has been provided anger management classes, parenting classes, and counseling. Opinions and reports of various counselors were in evidence. Mother has been diagnosed with anti-social and schizotypal personality disorders with intermittent explosive disorder. Rosemary Claus–Gray, a counselor who had treated mother, explained the diagnosis:

> [T]he antisocial personality traits indicate that she has a reckless regard for other human beings, lack of a sense of responsibility to others. And the schizotypal shows the magical thinking, the

rather unusual thought patterns, a poor attachment to reality, possible deterioration into schizophrenia. That has not happened, clearly, but—at this point—but is—is a possibility. And the explosive personality—intermittent explosive disorder is an impulsive flash of violence that can occur at almost any time without provocation. And this has happened several times directed at young children.

During the time Ms. Claus–Gray counseled mother, she noticed mother's personality deteriorate. At times mother's speech was not logical or sequential. She developed her own language. She became delusional, believing she had become a "she-wolf" and that she knew what others were thinking and could plant thoughts in other people. Ms. Claus–Gray supervised visits by mother with her children. The counselor observed inappropriate conduct by mother with them. She was often physically rough and verbally aggressive with the children. D.L.W. would withdraw and put up his hands to protect himself. Mother continued to have fits of rage and violence against D.L.W. and others despite counseling and other services she received through D.F.S. Services mother was provided included Intensive In–Home Services, counseling, Family Services, Parents as Teachers, special education, and parenting skills. She did not appear to benefit from those services.

Mother was independently evaluated by Dr. Steven Larsen, a licensed clinical psychologist. He did not agree with the previous diagnosis of schizotypal personality disorder, but attributed her unusual behavior and thinking to depression and her American Indian heritage. He nevertheless expressed concern about mother's long history of impulsivity, difficulty handling stress, and avoiding responsibility for her actions. He stated the opinion that mother was "immature in the way she views her children and does not really fully

understand how to take care of a child." He noted mother was extremely vulnerable to stress and identified her as being at high risk to abuse her children again.

There was no abuse of judicial discretion in the trial court's finding that it was in the best interests of D.L.W. for mother's parental rights to be terminated. Point I is denied.

Point II contends the trial court erred in terminating mother's parental rights to J.L.C. Point II follows the same format as Point I. It asserts "the trial court's findings were each against the weight of evidence in that the evidence was not clear, cogent and convincing and termination was not in the best interest of [J.L.C.]." That claim is followed by three subparagraphs, A, B and C, that recite particular findings by the trial court.

Subparagraph A questions the finding that after a period of more than one year during which J.L.C. had been under the juvenile court's jurisdiction mother remained paranoid schizophrenic. Subparagraph B questions the finding that there were no significant emotional ties between mother and J.L.C. Subparagraph C questions the finding that J.L.C. was at risk of harm by mother. Subparagraph C suggests that mother's completion of treatment programs negated that prognosis; that all incidents that occurred previously were "far removed in time."

As with Point I, Point II contains multifarious claims that group allegations of incidents of error into a single point relied on where the incidents do not relate to a single issue. On the same basis as discussed regarding Point I, this court perceives the nexus of mother's appeal to be her claim that the evidence did not support a finding that it was in the best interests of J.L.C. to terminate mother's parental rights. That issue will be addressed.

This court has also gratuitously reviewed the trial court's findings with respect to issues narrated in subparagraphs A, B and C to Point II. As with respect to Point I, the judgment to which Point II is directed is reviewable under Rule 84.13(d). This court concludes that the findings identified by subparagraphs A, B and C to Point II are supported by substantial evidence; that no error of law appears. Further opinion as to those issues would serve no precedential value. The claims are denied in compliance with Rule 84.16(b).

■■■ Mother had pleaded guilty to and been convicted of felony child abuse prior to the birth of J.L.C. She was on probation for that offense when he was born. A condition of that probation was that she not have unsupervised contact with minor children.

J.L.C. had never lived with mother. When mother visited J.L.C. and D.L.W., she interacted with D.L.W. without paying attention to J.L.C. J.L.C. had continually lived with his brother in foster care. He was emotionally attached to his brother and the children in the foster home that provided his care. The evidence recited with respect to Point I regarding mother's difficulty controlling anger and dealing with children is apropos to Point II as well. The trial court's finding that it was in the best interests of J.L.C. to terminate mother's parental rights was not an abuse of judicial discretion. Point II is denied.

### Dispositions

The judgment in No. 25718 is affirmed. The judgment in No. 25719 is affirmed.

RAHMEYER, C.J., and SHRUM, J., concur.