178 S.W.3d 683 (2005)
In the Interest of D.M.B., a child under seventeen years of age.
State of Missouri, Greene County Juvenile Office, Petitioner-Respondent,
v.
E.B., Respondent-Appellant.
No. 26686.
Missouri Court of Appeals, Southern District, Division Two.
October 25, 2005.
Motion for Transfer Denied November 16, 2005.
Application for Transfer Denied December 20, 2005.
*685 John E. Kelly, Springfield, for appellant.
Bill Prince, Springfield, for respondent.
PHILLIP R. GARRISON, Judge.
E.B. ("Mother"), appeals the termination of her parental rights to her biological son, D.M.B., by the Greene County Juvenile Court (the "Juvenile Court"). On appeal, Mother challenges the sufficiency of the evidence to support the Juvenile Court's ruling. We affirm.
D.M.B., born February 6, 1993, was living with his natural father, M.A.B, ("Father") when he was taken into protective custody on October 23, 2002, following a disclosure by D.M.B.'s sister, A.B., that both she and D.M.B. had been sexually abused by several people living in Father's *686 apartment in Greene County, Missouri.[1] At the time of the abuse, A.B. was living with Father's parents as a temporary relative placement by the Missouri Children's Division ("Division"), and was only visiting Father and D.M.B. Sometime after the abuse, Father and D.M.B. moved in with Father's parents and were living there when D.M.B. was removed and placed into protective custody.
Mother was living in Joplin, Missouri, when D.M.B. was placed in protective custody. The Division of Family Services ("DFS") did not place D.M.B. with her for at least two reasons: she had failed to cooperate with the Division or otherwise take the steps necessary to regain custody of A.B. after she had been placed in foster care as a result of neglect by Mother and Father, a fact which led to the Juvenile Court terminating Mother's parental rights to A.B. on December 4, 2002; and Mother had been diagnosed with bipolar disorder.
On October 23, 2002, a petition alleging neglect and abuse was filed by the Greene County Juvenile Office ("Juvenile Office") and a hearing was held, at which time the Juvenile Court found the allegations contained in the petition to be true and D.M.B. was placed in the custody of DFS. On June 6, 2003, following a home study, D.M.B. was placed with his fraternal aunt, Amy Buer, ("Aunt") then residing in Fort Scott, Kansas.
On July 21, 2003, the Juvenile Office filed a petition to terminate the parental rights of both parents as to D.M.B. pursuant to Section 211.447.[2] Hearings were held on May 3, 2004, and June 28, 2004, at which evidence was presented on the petition. The Juvenile Court took judicial notice of four separate juvenile case files involving D.M.B. and A.B. ranging from 2000 to 2003, including the involuntary termination of Mother's parental rights to A.B. On June 30, 2004, the Juvenile Court determined that the allegations of the petition were true based upon the evidence presented and that a judgment terminating the parental rights was in the best interest of D.M.B. On October 21, 2004, it entered its written findings of fact, conclusions of law, and judgment and order terminating the parental rights of Mother and Father. Mother now appeals.[3]
Mother relies on five points of error on this appeal. In Point I, Mother argues that the Juvenile Court's finding that termination of her parental rights was in the child's best interests was against the weight of the evidence. In Points II through V, Mother challenges the sufficiency of the evidence with regard to the Juvenile Court's grounds for termination.
The Juvenile Court terminated Mother's rights on two grounds: the child had been abused and neglected as provided in Section 211.447.4(2); and Mother was presumptively unfit, as provided in Section 211.447.4(6). "Where multiple statutory grounds for termination of parental rights are found, in order to affirm the judgment, the appellate court need only find that one of the statutory bases was proven and that the termination was in the best interest of the child." In re N.L.B., 145 S.W.3d 902, 906 (Mo.App. S.D.2004); see also In re E.L.B., 103 S.W.3d 774, 776 (Mo. banc 2003). We find that the trial court's determination that Mother is presumptively unfit to be a party to the parent-child relationship *687 under Section 211.447.4(6) was supported by sufficient evidence and that the Juvenile Court did not abuse its discretion in finding that the termination was in D.M.B.'s best interest. We therefore decline to address Mother's remaining points.[4]
Appellate courts "will affirm the trial court's decision to terminate parental rights unless the `record contains no substantial evidence to support the decision, the decision is against the weight of the evidence, or the trial court erroneously declares or applies the law.'" In re S.M.H., 160 S.W.3d 355, 362 (Mo. banc 2005) (quoting Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)); In re T.A.S., 32 S.W.3d 804, 808 (Mo.App. W.D. 2000). In essence this means that in order to reverse we must be "left with the firm belief that the order was wrong." In re S.M.H., 160 S.W.3d at 362. We view the evidence in the light most favorable to the Juvenile Court's judgment. In re J.B.D., 151 S.W.3d 885, 887 (Mo.App. S.D.2004). When conducting this review we also keep in mind that the Juvenile Court was in a better position to judge the credibility of the witnesses and was free to believe or disbelieve all, part or none of the witnesses' testimony. In re N.L.B., 145 S.W.3d at 906.
Termination of parental rights is governed by Section 211.447. In particular, subsection 5 provides:
The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer or the division, or in adoption cases, by a prospective parent, if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 3 or 4 of this section.
Section 211.447.5. This subsection sets out a two-step process which the Juvenile Court must follow in terminating parental rights. It must first determine that "grounds exist for termination under [S]ection 211.447." In re N.L.B., 145 S.W.3d at 906. If sufficient grounds are found the court must then determine that termination of the parental rights is in the child's best interest. Id. The grounds for termination must be proven by clear, cogent and convincing evidence, which means that which "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." In re K.A.W., 133 S.W.3d 1, 12 (Mo. banc 2004).
In Point II, Mother alleges that the Juvenile Court erroneously found her to be presumptively unfit to be a party to the parent-child relationship under Section 211.447.4(6), which provides:
The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse, including but not limited to, abuses as defined in section 455.010, RSMo, child abuse or drug abuse before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child. It is presumed that a parent is unfit to be a party to the parent-child relationship upon a showing that within a three-year period immediately prior to the termination adjudication, the *688 parent's parental rights to one or more other children were involuntarily terminated pursuant to subsection 2 or 3 of this section or subdivisions (1), (2), (3) or (4) of subsection 4 of this section or similar laws of other states.

(emphasis added).
In this case Mother does not dispute that her parental rights to A.B. were involuntarily terminated within the three years prior to the filing of the petition in this case. Nor does Mother allege that her rights regarding A.B. were terminated on grounds other than those required by Section 211.447.4(6). Rather she argues that she was prevented from "refuting" the presumption of parental unfitness because the State did not provide her a "service agreement" without which, she argues, she could not effectively change her situation.
The absence of treatment or services is no defense to a termination proceeding. In the Matter of M.M., 973 S.W.2d 165, 170 (Mo.App. S.D.1998); In re Interest of A.L.B., 743 S.W.2d 875, 881 (Mo.App. E.D.1987). Furthermore, a social service plan is not mandatory and its absence does not require reversal. In re I.B., 48 S.W.3d 91, 102 (Mo.App. W.D. 2001); In re T.A.S., 32 S.W.3d at 813; In Interest of D.B., 916 S.W.2d 430, 434 (Mo. App. E.D.1996); In Interest of J.K.C., 841 S.W.2d 198, 202 (Mo.App. W.D.1992). Section 211.183.7 specifically states that "[t]he division shall not be required to make reasonable efforts, as defined in this section,[5] but has the discretion to make reasonable efforts if a court of competent jurisdiction has determined that ... (3)[t]he parent's parental rights to a sibling have been involuntarily terminated." Therefore, DFS is relieved of any obligation to make reasonable efforts, e.g. provide services to facilitate the reunification of Mother and D.M.B.
Mother also argues that no clear, cogent and convincing evidence "buttressed the presumption of unfitness." "Aside from any finding that the parent is presumed unfit, [Section 211.447.4(6)] clearly requires the trial court to determine that the parent is currently unfit." In re T.A.S., 32 S.W.3d at 815.[6] The parent has the burden of overcoming the presumption of unfitness by presenting evidence "that the circumstances that led to the termination of the parent's parental rights in the other child no longer exist or that the parent is no longer unfit." In re C.C., 32 S.W.3d 824, 830 (Mo.App. W.D. 2000) (quoting In re A.H., 9 S.W.3d 56, 61 (Mo.App. W.D.2000)).
The Juvenile Court's judgment provided in pertinent part:
[Mother] is presumptively unfit to be a party to the parent and child relationship due to her parental rights to a sibling having been involuntarily terminated by order of this Court on December 4, 2002 in Greene County Juvenile Court case number 102JU0265. [Mother] presented no evidence to overcome or rebut the presumption of parental unfitness. There was, however, evidence *689 presented [by] the [Division] caseworker that [Mother's] situation had not changed appreciably from her situation as it existed at the time of the sibling's involuntary termination hearing. [Mother's] living circumstances and household composition continued to be unknown. [Mother] had not been cooperative with her Jasper County, Missouri [Division] worker. [Mother] did not provide verification of completion of parenting classes or successful participation in counseling.
In this case the Juvenile Court took judicial notice of Greene County Juvenile Court case number 102JU0265, in which Mother's parental rights to A.B. were involuntarily terminated on December 4, 2002, well within the three-year time frame provided for in Section 211.447.4(6). Mother pointed to no evidence in the record that could have led the Juvenile Court to find that the circumstances that led to the first involuntary termination no longer existed, or in the alternative that she is no longer unfit to be a party to the parent-child relationship.
To the contrary, the Juvenile Court expressly found that Mother failed to rebut the presumption of unfitness. The Juvenile Court pointed to evidence presented that "[M]other's situation had not changed appreciably from her situation as it existed at the time of the sibling's involuntary termination hearing." Although, Pam Holloway ("Holloway") and Dana Perkins, ("Perkins") both of whom were alternative care workers for the Division, testified that Mother had told them that she had seen a therapist and attended some parenting classes, Mother failed to produce any corroborating documentation. Furthermore, neither of them were able to contact the alleged treating therapist to confirm Mother's claims. Mother did not testify at the hearing, and did not offer any documentation to corroborate what she had told Perkins and Holloway. There was also evidence presented at trial that although given the contact information, Mother never contacted the Division representative for her county of residence. There is simply nothing in the record before us indicating that Mother took any substantial, affirmative steps to change her situation from when her parental rights to A.B. were involuntarily terminated. Therefore, based on the record before us, we find that the Juvenile Court had clear, cogent and convincing evidence that Mother was presumptively unfit to be a party to the parent-child relationship and she failed to overcome that presumption. Point II is denied.
In Point I, Mother alleges that the Juvenile Court's finding that termination of her parental rights was in the best interest of the child was against the weight of the evidence. "The determination of what is in a child's best interests is an ultimate conclusion for the trial court based on the totality of the circumstances." In re D.L.W., 133 S.W.3d 582, 585 (Mo. App. S.D.2004) (quoting In re K.J.K., 108 S.W.3d 62, 68 (Mo.App. S.D.2003)). This subjective assessment is not to be reweighed by appellate review. Id.
Mother asserts that there was insufficient evidence presented for the trial court to determine that termination of her parental rights was in the child's best interest. She also appears to argue that the clear, cogent and convincing standard applies to both the "best interest" prong and the "grounds for termination" prong of Section 211.447.5. However, this standard only applies to the grounds for termination. A juvenile court's best interest determination must be based on a preponderance of the evidence. In re N.R.W., 112 S.W.3d 465, 468 (Mo.App. W.D.2003). We review this finding under an abuse of *690 discretion standard. In re N.L.B., 145 S.W.3d at 911; see also In re C.W., 64 S.W.3d 321, 326 (Mo.App. W.D.2001); In re A.S., 38 S.W.3d 478, 486 (Mo.App. S.D. 2001). Therefore, "if the record supports the [J]uvenile [C]ourt's finding that termination of parental rights was in the best interests of the child, the judgment must be affirmed." In re N.L.B., 145 S.W.3d at 911.
We find that the Juvenile Court did not abuse its discretion because its finding that termination was in the best interests of D.M.B. was supported by sufficient evidence. The record shows no evidence of a strong emotional bond between D.M.B. and Mother. To the contrary, Holloway testified that what visitation there was between Mother and D.M.B. was suspended when it began to have a negative impact on him. The evidence presented at the hearing showed that, prior to visitation being suspended, Mother had phone contact with D.M.B. every other week and sporadic physical visitation whenever she was in Springfield. The evidence further showed that after D.M.B. was placed with his Aunt she only saw him twice and wrote to him twice. Both Perkins and Holloway testified that at no point in the process did Mother request additional visitation. "A parent has an affirmative duty to show [she] is committed to the child and is required to support, communicate and visit with [her] child." In Interest of C.L.W., 115 S.W.3d 354, 359 (Mo.App. S.D.2003).
Both Perkins and Holloway also testified that at no time did Mother render monetary or in-kind support to D.M.B. while he was in the custody of his Father or the Division. As was discussed above, there was also evidence presented that there were no additional services which would be likely to change Mother's circumstances. Mother had been provided services in A.B.'s case and was unable, or unwilling to change her situation in order to regain custody of her.
Furthermore, the Juvenile Court heard evidence that Mother had not provided the Division with any information regarding her residence or with whom, if anyone, she was living. As such it was impossible for the Division to determine whether Mother's living arrangements would be suitable for D.M.B. Section 211.443 specifically directs the Juvenile Court to construe Sections 211.442 through 211.487, including the statute at issue in this case, in such a way as to "promote the best interests and welfare of the child" keeping in mind the "[e]ntitlement of every child to a permanent and stable home."
We will only reverse a ruling for abuse of discretion "when it is so clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." In re E.D.M., 126 S.W.3d 488, 497 (Mo.App. W.D.2004) (quoting In re M.O., 70 S.W.3d 579, 585 (Mo.App. W.D.2002)). Mother has not met this high standard. Therefore we find the Juvenile Court did not abuse its discretion in finding that termination of Mother's parental rights was in the best interest of D.M.B. Point I is therefore denied.
Based upon the record before us we find that there was clear, cogent and convincing evidence that Mother was presumptively unfit under Section 211.447.4(6) because her parental rights to A.B. were involuntarily terminated within the three years prior to the initiation of the proceedings now under review. Mother presented no evidence, nor does a careful reading of the record reveal evidence, which would rebut that presumption of unfitness. Furthermore, there was ample evidence upon which the Juvenile Court could find that *691 termination of Mother's parental rights was in the best interests of D.M.B. Accordingly the Juvenile Court's judgment is affirmed.
BATES, C.J., and BARNEY, J., concur.
NOTES
[1] A.B. had been placed in foster care in 2000 by the Juvenile Court.
[2] All references to statutes are to RSMo (2000) unless otherwise indicated.
[3] Father does not appeal the Juvenile Court's decision.
[4] For the sake of clarity we address Mother's points in reverse order.
[5] "Reasonable efforts," as defined in Section 211.183.2, "means the exercise of reasonable diligence and care by the [D]ivision to utilize all available services related to meeting the needs of the juvenile and the family. In determining reasonable efforts to be made and in making such reasonable efforts, the child's present and ongoing health and safety shall be the paramount consideration."
[6] The court in In re T.A.S. was applying the 1997 version of Section 211.447 (which was amended in 1998) in which subdivision (6) of subsection 4 was referred to as subdivision (6) of subsection 2. See Id. at n. 2. There is no substantive difference relevant to our inquiry between the pertinent portions of the 1997 and 2000 versions of Section 211.447.