

# Missouri Court of Appeals

## Southern District

### Division One

IN THE INTEREST OF:　　　　　　　　　　 )
D.T.L. and C.J.L.,　　　　　　　　　　　 )
children under seventeen years of age.　 )
　　　　　　　　　　　　　　　　　　　 )
GREENE COUNTY JUVENILE OFFICE,　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　Petitioner-Respondent,　　　 )　　Nos. SD32759 and SD32760
　　　　　　　　　　　　　　　　　　　 )　　　　　(Consolidated)
　　vs.　　　　　　　　　　　　　　　　 )　　Filed:  January 27, 2014
　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
V.D.L.,　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　Respondent-Appellant.　　　 )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable David C. Jones, Circuit Judge

**AFFIRMED**

The two children, D.T.L. and C.J.L. (collectively "the children"), who were born to

V.D.L. ("Mother"), and are the subject of this termination,[1] were taken into custody from the

hospital shortly after each of their births.  The basis of taking custody was the fact that Mother

---

[1] The biological fathers were unknown and not the subject of this appeal.

had another child in protective custody for which she had not addressed the concerns that brought the other child into care: Mother's mental health needs, lack of parenting skills, and anger management problems. The trial court terminated Mother's parental rights to the children on several grounds: (1) the children were abused and/or neglected by Mother; (2) D.T.L. was subject to the jurisdiction of the trial court for more than one year and the conditions leading to the assumption of jurisdiction continued to exist; and (3) Mother did not overcome the presumption of unfitness as a party to the parent-child relationship with respect to D.T.L. and C.J.L. due to her parental rights having been involuntarily terminated to a child less than three years previously.

Mother challenges all three grounds for termination and challenges the trial court's finding that it was in the best interest of the children to have her parental rights terminated. In reviewing a judgment that terminates parental rights, we view the evidence in the light most favorable to the judgment and will affirm the judgment unless there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence, or the trial court erroneously declares or applies the law. *In re D.M.B.*, 178 S.W.3d 683, 687 (Mo. App. S.D. 2005). "'Where multiple statutory grounds for termination of parental rights are found, in order to affirm the judgment, the appellate court need only find that one of the statutory bases was proven and that the termination was in the best interest of the child.'" *Id.* at 686 (quoting *In re N.L.B.*, 145 S.W.3d 902, 906 (Mo. App. S.D. 2004)).

With that standard in mind, we shall address the trial court's finding that Mother did not overcome the presumption of unfitness as a party to the parent-child relationship pursuant to

2

section 211.447.5(6).[2] Pursuant to section 211.447.5(6), if Mother had an involuntary termination of her parental rights within three years of the termination judgment at issue in this appeal, she was presumed to be unfit to parent a child and it became her burden to overcome the presumption. *In re D.M.B.*, 178 S.W.3d at 688 ("The parent has the burden of overcoming the presumption of unfitness by presenting evidence that the circumstances that led to the termination of the parent's parental rights in the other child no longer exist or that the parent is no longer unfit.") (internal quotation and citation omitted). Mother does not dispute that she had her parental rights involuntarily terminated to a third child, C.D.L., on or about October 11, 2011, and that the termination judgment with respect to C.D.L. was appealed and affirmed. It was Mother's burden to overcome the presumption that she was unfit to parent D.T.L. and C.J.L.[3]

With great credit given to Mother, she did attend individual counseling and made progress in therapy to a point; however, her counselor did not feel Mother was able to provide the necessary safety for a child. Likewise, Mother's caseworker testified that Mother needed to address her unrealistic expectations of her children, making choices that resulted in a higher likelihood of safety for herself and the children, boundaries, anger management, and her mental

---

[2] All references to statutes are to RSMo Cum.Supp. 2011, unless otherwise indicated. The petition to terminate Mother's parental rights to D.T.L., was filed in October 2012, and the petition to terminate Mother's parental rights to C.J.L., was filed in January 2013.

[3] Respondent argues that Mother is actually claiming error that the trial court did not make findings she was currently unfit, and not that there was no evidence that Mother was currently unfit. We disagree. Mother clearly argues that the evidence she produced overcomes the presumption. To the extent Mother argued that the trial court did not find she was currently unfit, we believe the trial court's express (1) reference to evidence that Mother "continues to suffer from a mental condition that makes her unable to knowingly provide the child[ren] with the necessary care, custody and control[,]" and that Mother's "condition had not significantly changed from 2009 and that she would present a safety risk to any child that was in her care[,]"and (2) conclusion that Mother had failed to overcome the presumption that she was unfit in combination is the substantive equivalent of a finding that Mother was currently unfit to be a parent because she failed to show the circumstances that led to the earlier termination no longer exist or she is no longer unfit. Unlike in *In re T.A.S.*, 32 S.W.3d 804, 814-15 (Mo. App. W.D. 2000), no further findings are necessary in this case to "clarif[y] that the presumption of unfitness was not overcome."

condition. During the period that the caseworker worked with Mother, there were times Mother would not provide the caseworker with an address or contact information for "the friend" she was living with, nor allow her to visit at that residence. Although there was some improvement in her anger management issues, in the time prior to trial, Mother seemed to have regressed, her anger was apparent, and affected her interaction with the children.

Mother was evaluated by Dr. Mark Bradford in 2009, who found Mother's IQ to be well below the average range of intellectual ability. He diagnosed her with having a mood disorder; depressive disorder; post-traumatic stress disorder; mixed personality with borderline, antisocial and paranoid features; and borderline personality disorder. He then viewed her prognosis as being guarded as he was concerned she might not have the ability to assimilate change and a child would be at risk in her care. In a 2013 update to determine Mother's progress and if her diagnosis had changed in any way, Dr. Bradford found her cognitive ability slightly lower than in 2009 and diagnosed her as having bipolar II disorder, with the remaining diagnosis the same. His prognosis for Mother being able to care for the children was slightly worse than when he saw her four years earlier, and he was concerned she did not appear to be able to meet minimum parenting standards.

Somewhat in contrast, Dr. Robison testified as to his work with Mother. In June 2012, Mother started seeing Dr. Robison for psychotherapy. He worked with her on her depression and bipolar symptoms, boundary issues, parenting skills, and anger management. Mother made significant progress in how she viewed herself in the time she worked with Dr. Robison, she was less emotional and less overwhelmed, but while making progress on her boundary issues, she continued to allow people to take advantage of her. He was concerned with Mother's association with violent men, but did not think it would affect her ability to parent the children. He felt she

4

was appropriately diagnosed as disabled due to her IQ and skill deficits and that this disability would prevent her from being able to be employed, but that they would not prevent her from parenting. Dr. Robison testified that Mother made all decisions with the goal of having her children returned to her and despite her "deficits in her process, in her way of looking at the world, in her cultural background, her upbringing, and even deficits in IQ," he felt she would be a "good enough parent." Despite those findings, he had reviewed the psychological evaluations that had been performed by Dr. Bradford and "had no reason to think Dr. Bradford's findings were not valid."

Several parent aides testified as to Mother's inability to supervise the children. Suggestions for proper supervision would be made often to Mother, but she did not incorporate the suggestions or the problems would continue at the next visitation. Mother angered easily and on one occasion, C.J.L. had to be taken away from Mother due to her anger. Additionally, Mother was engaged to a man that is incarcerated, but not the father of either of the children. She has not been forthcoming with information about the men she has been involved with or has "let in the home[.]" She claims that some of her children were conceived through rape and that she had been repeatedly sexually assaulted. She claims she felt threatened by one man that was exploiting her so she shoplifted in order to be taken to a police station. Mother filed for an order of protection against a different man, whom she thought had fathered C.J.L., after he physically abused her and threatened her life. Although she was granted the full order, she appeared in court twenty days later with the man and asked that the order be rescinded.

Clearly, the trial court did not err in finding that despite the positive evidence that Mother provided the court, she did not overcome the presumption that she remained unfit at the time of trial. The trial court properly found a statutory ground for the termination of Mother's parental

5

rights. The trial court also did not err in finding sufficient evidence that the termination of Mother's parental rights was in the best interest of the children.

The determination of what is in the child's best interest is an ultimate conclusion for the trial court based upon the totality of the circumstances. *In re D.L.W.*, 133 S.W.3d 582, 585 (Mo. App. S.D. 2004). The standard applied to determine best interest of the minor child is whether the trial court abused its discretion. *In re K.L.C.*, 332 S.W.3d 330, 342 (Mo. App. S.D. 2011). The above-cited evidence that supported the grounds for termination also supports the finding that the termination was in the best interest of the children. Despite her efforts, Mother is simply not able to provide the day-to-day care of the children required, or provide for their safety from her companions and from her poor choices. Given the very young age of these children and the need for intensive parenting at their ages, the trial court's finding on this issue is correct.

The Judgment is affirmed.

NANCY STEFFEN RAHMEYER, P.J. - OPINION AUTHOR

DANIEL E. SCOTT, J. - Concurs

GARY W. LYNCH, J. - Concurs

6